THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant, *v.* CHARLES BUCKNER, Appellee.

APPEAL FROM IROQUOIS.

It is negligence for a deaf person to drive an unmanageable horse across a railroad track, when a train is approaching; it is his duty to keep a look out and avoid the danger. It is no excuse that the horse rushed upon the track near a crossing, or was driven there to avoid the engine.

THIS was an action on the case by Buckner against the Illinois Central Railroad Company, brought to the Iroquois Circuit Court.

The jury found the defendant below guilty, and assessed Buckner's damages at $2,500. Motion for a new trial overruled. Buckner had his arm broken, and was otherwise injured; his horse was killed, and his wagon destroyed.

The facts, as they appear in this record, are substantially as follows:

On the 23rd day of August, 1860, a train of cars belonging to the appellant was returning from Gilman, whither it had been with empty cars, to Kankakee. The train consisted of an engine, tender and one way car; and reached Chebance, going northward, at about 4:25 P. M., an hour when there was no regular train due at that point, from either the north or the south.

There is some discrepancy in the testimony, as to the speed with which the train was moving. The witnesses, McLaughlin, Cooper and Vaughn, who were on the train, swear that they were going from seven to eight miles an hour, while the witnesses, Biglow, and Mr. and Mrs. Warner, think they were going much faster. At the whistling post, eighty rods below the depot, the whistle was blown, and the train came nearly

to a stand.   North of the depot was the regular public road-crossing, with the railroad sign-board up.   The appellant did not regard the crossing on the south as a road-crossing.   The approaches to the track were perfectly level; no work had been done to the ground, no sign-boards put up; but as it was easy to pass, the public did cross at this point, and the company laid down plank to protect their rails.

When the cars were coming through the cut at the south, which was about four hundred feet below the crossing, the plaintiff was about fifty feet west, driving on to the track. When plaintiff's horse struck the side track, the train was at the corn crib, which was a hundred to a hundred and fifty feet below the crossing.   The plaintiff had a young horse, and was driving very fast.   He was coming on to the track at the rate of six or eight miles an hour.

The horse and wagon went on to the track; the appellee then discovered the coming train, and paused, then turned to the left; he advanced some ten or fifteen feet, or half way from the crossing to the end of the platform, on the appellant's track, and then was caught.   The wagon was first struck. The horse's head had been turned from the east to the north; and plaintiff was thrown by the engine on to the platform. The plaintiff, at the time, was partially deaf.

The appellee, immediately after he was taken up, said if he had had his hearing, the accident would not have happened.

DOUGLASS, WOOD & LONG, and B. C. COOK, for Appellant.

Cited, 19 Conn. 566; 2 Am. Railway Cases, 378, 123; 16 Ill. 570; 1 Dutch. N. J. 556; 43 Maine, 492; E. D. Smith, N. Y. Rep. 271; 6 Ohio, N. S. 105; 30 Pa. State Rep. 454; 18 N. Y. 248, 422; 27 Barbour, 221; 20 Ill. 251; 19 Ill. 509, 636; 20 Ill. 496; 13 Ill. 548; 3 Wheaton, 546; 16 Ill. 508.

JOINER, BLADES, FLETCHER & KAY, for Appellee.

"Negligence, or want of care, of whatever degree, is, from its very nature, a question of fact, and therefore to be decided by the jury."   Beers v. Housatonic R. R. Co., 2 Am. R. R. Cas. 117, 118.; Sulivan v. Dollins, 13 Ill. 85; Bloomer v.

*Denman*, 12 Ill. 240 ; *Young* v. *Silkwood*, 11 Ill. 36 ; *Duffield* v. *Cross*, 13 Ill. 699 ; *Bird* v. *Holbrook*, 15 Eng. Com. L. R. 91 ; *Galena and Chicago Union R. R. Co.* v. *Jacobs*, 20 Ill. 485—496.

If there be, in any degree, want of ordinary care on the part of the plaintiff below, this evidence supports the position that his misconduct bears no proportion to the misconduct of the defendant. 15 Eng. C. L. R. 91 ; *Lynch* v. *Nurdin*, 41 Eng. C. L. R. 422 ; *G. & C. U. R. R. Co.* v. *Jacobs*, 20 Ill. 485—496.

The plaintiff below had a right at the crossing. He cannot be viewed as a trespasser. The evidence shows, that by the *acts* of the railroad company *that* right of way had been dedicated to the public. *Baraclough* v. *Johnson*, 35 Eng. C. L. R. 339 ; *Godfrey* v. *City of Alton*, 12 Ill. 35 ; *Holden* v. *Trustees of Cold Spring*, 23 Bart. 119 ; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 413, 414 ; *Ward* v. *Davis*, 3 Sandf. 502 ; *Davids* v. *The People*, 21 Ill. 439 ; *Lyman et al.* v. *The People*, 1 Gilm. 4 ; *Nealy* v. *Brown et al.*, 1 Gilm. 10 ; *Dumoss et al.* v. *Francis*, 15 Ill. 543 ; *G. & C. U. R. R. Co.* v. *Loomis*, 13 Ill. 548 ; *C. & R. I. R. R. Co.* v. *Reid*, 24 Ill. 144.

CATON, C. J. However our sympathies may be with the plaintiff below, the law must take its course. Whatever dispute there may be about the speed at which the train was running, there are other facts about which there is no dispute. Whether this be a regular road-crossing of the track or not, it is not controverted that the plaintiff approached the crossing from the west in such a position that he could see the train for a considerable distance if he had looked, and could have heard it for near half a mile, according to the testimony of his own witnesses, if he had possessed the faculty of hearing in an ordinary degree. Dr. Warner says, a person two hundred feet from the crossing could see down the track ; and Mrs. Warner says, "Any person, of ordinary hearing, could have heard the cars. I could have heard them if I had been where I saw Mr. Buckner." But he did not hear them. He was, to a degree, deaf. He was driving a colt three or four

years old, which appears to have been fractious or timid.
When he got on the track, the colt became frightened and ran
up the track, or north on the track, from the approaching
train, and was overtaken by it some distance north of the
crossing; according to the testimony of all the witnesses, and
as the engineer testifies, many yards from the crossing. Mrs.
Warner says, when the plaintiff got upon the track the cars
were at Leonard's corn-crib, when the horse became unman-
ageable and ran north upon the track, towards the depot.
John Buckley says, "When Buckner went on the track the
cars were forty or fifty yards off." "The horse turned to the
north; the wagon was on the track." On this state of facts,
the court was asked to instruct the jury, for the defendant,
that the plaintiff had no business upon the track above the
crossing, and that he was there of his own wrong and at his
own risk, if without permission, and that he could not recover
for an injury there sustained, unless willfully committed by
the defendant. This the court gave with this explanation:
" This would not apply, if the jury should believe, from the
evidence, that the horse rushed on the track north of the
crossing to avoid the engine, or the plaintiff turned him that
way for that purpose." This threw upon the defendant the
consequences of acts of the horse in rushing up the track from
the impulse of fear, or of the acts of the plaintiff arising from
the same cause, although it may have been, as indeed it
appears to have been, the most reckless course that could have
been taken, if it was the voluntary act of the plaintiff. But
it was no doubt the act of the horse in a state of alarm, he
having become unmanageable, rushing to destruction in the
shortest and most obvious way possible. And to this uncon-
trolable act of the horse is this accident attributable. If he
had time to go ten yards up the track before he was overtaken
by the train, which was forty or fifty feet from him when the
wagon was on the track, and necessarily the horse across it,
it is difficult to perceive why he could not have crossed the
track before the train would have reached it, had he kept on
at the same speed. That would seem to be demonstrable as a
mere question of time and distance. Now who must be

responsible for this act of the horse? Undoubtedly, the plaintiff, who owned him, and who drove him there, without knowing that he was reliable. But the court told the jury, if the plaintiff turned him there to avoid the engine, then he was there rightfully. That would depend upon whether that was a judicious and proper course to avoid the danger. If it was a careless or reckless running into danger to go there, then the plaintiff must himself suffer the consequences of that act, no matter what motive may have prompted the act. This explanation of the instruction was wrong.

But without this, it seems to us, that there was a great want of proper care in the plaintiff, knowing as he did, that he could not hear an approaching train like ordinary persons, in not keeping a vigilant look out, that he might see it, when approaching a railroad crossing. That he could have seen the train had he looked down the track with a vigilant attention, there can be no doubt, and it is equally apparent that if he had seen its approach, he could and no doubt would have avoided the danger, and have saved himself this great calamity. This is even a stronger case of inattention and carelessness on the part of the plaintiff, than was that of *Rock Island Railroad Co.* v. *Still*, 19 Ill. 499, though in some of its features very much like it.

We must reverse the judgment, and remand the cause.

*Judgment reversed.*