————o————

EDWARD FLETCHER, Respondent, *vs*. THE ATLANTIC & PACIFIC RAILROAD COMPANY, Appellant.

1. *Negligence—When question of for court.*—Ordinarily the question of negligence is one for the jury, under proper instructions, but where there is no conflict in the evidence as to the facts, or where they are undisputed, the question whether they amount to negligence, or to contributory negligence, is one to be determined by the court.

2. *Railroad—Public crossing—Injuries—Failure to ring bell—Negligence direct and contributory.*—The failure of a railroad company to comply with the statute in ringing its bell or blowing its whistle on approaching a public crossing is negligence. in law. But where the party receiving the injury contributes directly thereto, as where having an unobstructed view of the railroad, so as to know of the approach of a train in sufficient time to avoid the collision, he attempts to pass over a public crossing, above which is a signal to "look out for the cars," and is struck in so doing, his injury is directly caused by his own negligence, and he cannot make the failure of the company to ring its bell or blow its whistle the foundation of a claim for damages.

*Appeal from the Special Law and Equity Court of Jackson County.*

J. *N. Litton*, for Appellant, cited: Devitt vs. Pacific R. R., 50 Mo. 302 ; Barton vs. Iron Mountain R. R., 52 Mo. 258 ; Evans vs. A. & P..R. R. Co., 62 Mo. 59 ; Smith vs. Union R. R., 61 Mo. 591 ; Maher vs. Pacific R. R., *ante* p. 267 ; Boland vs. Missouri R. R. Co., 36 Mo. 491 ; Vinton vs. Schwab, 32 Vt. 612 ; Callahan vs. Warne, 40 Mo. 136 ; 1 Greenl. Ev. §§ 44, 48 ; Smith vs. Hann. & St. Joe. R. R. Co., 37 Mo. 292 ; Norton vs. Ittner, 56 Mo. 352 ; Owens vs. Hann. & St. Joe. R. R.,

58 Mo. 393 ; Isabel vs. Hann. & St. Joe. R. R., 60 Mo. 482 ; Shearm. & Redf. Neg., §§ 25, 36, pp. 27, 40 ; Karle vs. K. C. etc. R. R. Co., 55 Mo. 484 ; Artz vs. Chicago, R. I. & P. R. R., 34 Iowa, 160 ; Havens vs. Erie R. W., 41 N. Y. 296 ; Ernst vs. Hudson River R. R. Co., 39 N. Y., 61 ; 35 Ib. 9 ; Wilcox vs. Rome, W. & O. R. R. Co. 39 N. Y. 358 ; Baxter vs. Troy & Boston R. R. Co., 41 N. Y. 502 ; Nicholson vs. Erie R. W. Co., 41 N. Y. 525 ; Gonzales vs. New York & Harlem R. R. Co., 38 N. Y. 440 ; Wilds vs. Hudson River R. R. Co., 29 N. Y. 315 ; 24 Ib. 430 ; Gorton vs. Erie R. R. Co., 45 N. Y. 660 ; Morris & Essex R. R. Co. vs. Haslan, 4 Vroom (N. J.) 149 ; Runyan vs. Central R. R. Co., 1 Dutch. (N. J.) 558 ; Chicago & Alton R. R. Co. vs. Fears, 53 Ill. 115 ; Lafayette & Ind. R. R. Co. vs. Huffman, 28 Ind. 287 ; Pittsburg & Ft. Wayne R. R. Co. vs. Vining, 27 Ind. 513 ; Toledo & Wabash R. R. Co. vs. Goddard, 25 Ind. 185 ; Steves vs. Oswego & Syracuse R. R. Co., 18 N. Y. 422 ; Sheffield vs. Rochester & S. R. R. Co., 21 Barb. 399 ; Brooks vs. Buffalo & N. F. R. R. Co., 25 Ib. 600 ; Chicago, R. I. & P. R. R. Co. vs. Still, 19 Ill. 499 ; C. C. & C. R. R. Co. vs. Terry, 8 Ohio St. 570 ; Evansville & C. R. R. Co. vs. Hiatt, 17 Ind. 102 ; Illinois Central R. R. Co. vs. Buckner, 28 Ill. 303 ; North Penn. R. R. Co. vs. Heilmann, 49 Penn. St. 60 ; Harlem R. R. Co. vs. Coyle, 5 P. F. Smith, 396 ; Chicago & A. R. R. Co. vs. Gretzner, 46 Ill. 74 ; Shearm. & Redf. Negl. §§ 25, 488 ; Finlayson vs. C., B. & Q. R. R. Co., 1 Dill., C. C. Rep. 579 ; R. R. Co. vs. Skinner, 19 Penn. St. Rep. 298 ; Phila. & Reading R. R. Co. vs. Hummell, 44 Penn. St. 375 ; R. R. Co. vs. Norton, 24 Penn. St. 465 ; Ft. W. & C. R. R. Co. vs. Evans, 53 Penn. St. 250 ; Fleytas vs. Pontchartrain R. R. Co., 18 La. 339 ; Jeffersonville, Madison, etc., R. R. Co. vs. Goldsmith, 47 Ind. 43 ; Maynard vs. Boston & M. R. R. Co., 115 Mass. 458 ; Munger vs. Tonawanda R. R. Co., 4 Comst. [N. Y.] 357 ; Vandergrift vs. Rediker, 2 Zab. 185 ; Cin., D. & H. R. R. Co. vs. Waterson, 2 Ohio St. 424 ; Tower vs. Worc. R. R. Co., 2 R. I. 404 ; Louisville R. R. Co. vs. Ballard, 2 Metc. (Ky.) 177 ; Gillis vs. Penn. R. R. Co., 59 Penn. St. 122 ; Ilott vs. Wilkes, 3 B. & Ald. 304 ; Hounsell vs. Smith, 7 C. B. (N. S.) 731 ;

Binks vs. South Yorkshire R. R. Co., 3 B. & S. 244 ; Phila. & Read. R. R Co. vs. Spearen, 47 Penn. St. 300.

*Tichenor & Warner*, for Respondent, cited : Allen vs. Willard, 57 Penn. St 374–380 ; Greenleaf vs. Ill. Cent. R. R. 29 Iowa, 48 ; Wagn. Stat. 310, § 43 ; Owens vs. Hann. & St. Joe. R. R., 58 Mo. 386 ; Stoneman vs. A. & P. R. R. Ib. 503 ; Tabor vs. Mo. Valley R. R., 46 Mo. 353 ; Girard Passenger Rly. Co. vs. Middleton, Law & Eq. Rep. [1877] 504 ; Clayards vs. Dethick, 64 Eng. C. L. 437 ; Thompson vs. North Mo. R. R.. 51 Mo. 190 ; Lloyd vs. Hann. & St. Joe. R. R. 53 Mo. 509 ; Brown vs. Hann. & St. Joe. R. R., 50 Mo. 466 ; Smith vs. Union R. R. Co., 61 Mo. 588 ; Radley vs. The Directors of the London & N. W. Rly., Law & Eq. Rep. [1877] 467 ; Baltimore & Ohio R. R. Co. vs. Mulligan [Md., 1877], Ib. p. 433 ; Huelsenkamp vs. Citizens' R. R. 37 Mo. 537 ; Tabor vs. Mo. Valley R. R. Co.; 46 Mo. 356 ; Brown vs. Hann. & St. Joe. R. R., 50 Mo. 466 ; Whalen vs. St. L., K. C. & N. R. R. Co., 60 Mo. 323 ; Isabel vs. Hann. & St. Joe. R. R. Co., 60 Mo. 475 ; Ernst vs. Hudson River R. R. Co., 35 N. Y. 26 ; Kennayde vs. Pacific R. R. Co., 45 Mo. 262 ; Burham vs. St. L. & I. M.. R. R. Co., 56 Mo. 338 ; Brown vs. N. Y. C. R. R., 32 N. Y. 601.

HENRY, Judge, delivered the opinion of the court.

This was an action by plaintiff to recover damages for injuries received by him under the following circumstances :

On the first day of February, 1872, plaintiff, who lived about two miles east of Kansas City, and one Cecil were in Cecil's wagon returning home from Kansas City. From Kansas City defendant's road runs in an easterly direction, and there is also a public road from Kansas City, running in the same direction, and for four or five hundred feet west of a public crossing of defendant's road by said public road, the two run parallel and not exceeding twenty-five feet apart.

The Novelty mills are about three hundred and sixty yards west of this crossing, and between said mills and a brick house standing about twenty-five feet from the railroad, and two hundred and seventy yards west of the crossing, plaintiff says he looked back

and saw no train approaching, but that he did not again look back until the accident occurred.

From the crossing, west, at any point on the public road within fifty or sixty yards, one can see the whole track west for a distance of a half a mile. Plaintiff testified: "If I had looked back at any time, along that fifty or sixty yards, I could have seen the train in time to have prevented the accident. I did not look for the train or listen for it. I did not think of it." Nor did Cecil, who was driving the team, look or listen for a train, but drove upon the crossing, when the wagon was struck by the locomotive, and plaintiff was thrown from the wagon and seriously injured.

At this crossing, across the dirt road, in plain view, was a wide board upon which, in large letters was printed, "Railroad Crossing! look out for the cars!" There was evidence on the part of plaintiff, tending to prove, that the bell was not rung, nor the whistle blown, on the train as it approached the crossing. The conductor and brakeman testified to the contrary, but we shall assume that the preponderance of the evidence was on the side of the plaintiff on that issue.

The accident occurred a few minutes after five o'clock P. M.— as soon after five o'clock as the train, moving fifteen or twenty miles an hour, could make a distance of between one and two miles. The exact distance from Kansas City to the crossing does not appear, but as plaintiff lived two miles east of the city, and the accident occurred before he reached home, it must have been less than two miles.

Plaintiff in his testimony stated that he knew that the train was to leave the city, going east, at five o'clock that afternoon; that he knew it was about five o'clock when he and Cecil were on the road going home, and that he had lived in that neighborhood since 1860, and near the defendant's road.

There was snow on the ground five or six inches deep, and to some extent it deadened the sound of a moving train.

At the close of plaintiff's testimony the defendant asked the court to instruct the jury, that upon the pleading and evidence

the plaintiff could not recover, which the court refused. It is unnecessary to notice the others.

The jury found a verdict for plaintiff for $650.00, and a motion for a new trial having been overruled, and a judgment for plaintiff rendered in pursuance of the verdict, defendant has brought the cause to this court by appeal. The failure of the employees of defendant to comply with the requirements of the statute, in regard to ringing the bell and blowing the whistle on approaching public crossings, was negligence, and, if plaintiff was injured in consequence of the neglect of that duty, he is entitled to recover, unless plaintiff's own negligence contributed directly to produce the result.

In the case at bar plaintiff's own testimony made out a case of negligence on his part, and we are asked to determine whether it was not such negligence as precluded plaintiff from recovering, and whether the court should not have given the instruction asked for by defendant, at the close of plaintiff's evidence. Ordinarily the question of negligence should be submitted to a jury, under proper instructions, but when there is no conflict of evidence, in regard to the facts relied upon as constituting negligence, it is the duty of the court to determine whether those facts do, or do not, constitute negligence ; and we think that it is equally the duty of the court, where the facts are undisputed, to determine whether those facts of themselves constituted direct contributory negligence. (Maher vs. The Atlantic & Pac. R. R. Co., *ante* p. 267.)

Wharton in his work on the Law of Negligence (§ 384), says : " When a person knowingly about to cross a railroad track may have an unobstructed view of the railroad, so as to know of the approach of a train in sufficient time to clearly avoid the injury from it, he cannot, as a matter of law, recover, although the railroad company may have been also negligent, or neglected to perform a statutory requirement."

Shearman & Redfield on Negligence, (§§ 488, 488*a*,) are yet more clear and emphatic : "It is universally deemed culpable negligence for any one to cross the track of a railroad, operated by steam power, in full view or hearing of an approaching train,

or without taking any precautions (if any are reasonably within his power) to ascertain whether a train is approaching ; and as a general, but not invariable rule, it is such negligence to cross without looking in every direction that the rails run, to make sure that the road is clear." "The statutes giving a right of action to persons injured by the neglect of a railroad company to ring a bell at a highway crossing, do not confer such right of action irrespective of the injured person's own negligence. One whose own fault has contributed to his injury, cannot take advantage of these statutes ; nor is the defendant's omission to ring a bell any excuse for the plaintiff's omission to look up and down the track."

The case of Gorton vs. The Erie R. W. Co., (45 N. Y. 662,) was one strikingly resembling the case at bar, in its facts, which as given by Allen, J., who delivered the opinion of the court, were as follows :

"The highway crossed the railroad at an acute angle and the plaintiff was moving along the road and across the railroad in a south-easterly direction, approaching the railroad from the north west, and the colliding train of cars approached from the west on the southernmost of the two railroad tracks. The course of the railroad, at that point, was in a direct line both east and west, and the plaintiff testified that when he got onto the track there was nothing to prevent him from looking both east and west ; that is, that there was nothing, as he approached and reached the railroad track, to intercept or obstruct his view, or prevent his seeing the approaching train had he looked in that direction ; that the space between the two tracks was three or four feet ; that when he drove up to the north rail he made no effort to look west to see whether a train was coming ; that he did not try to look west at that time."

It was shown that the bell was not rung nor the whistle sounded as required by statute.

At the close of the evidence defendant moved that plaintiff be nonsuited, upon the ground that he was shown to have been negligent, both in approaching and crossing the railroad track.

The court held that the motion should have been sustained. And Allen, J., observed; "It is not imposing an onerous duty upon the traveler crossing a railroad in broad day light, over which trains of cars were frequently passing, and are liable to pass at any time, to make use of the most common and lowest degree of observation and care, and to cast his eyes in both directions, and in every direction from which danger may be apprehended."

"He may not shut his eyes and stop his ears, and rush on regardless of the peril, and hold the railroad company as the insurer of his life, not only against the acts of its servants, but against his own suicidal negligence. The doctrine has been declared by this court, and re-affirmed, that a traveler approaching a railroad track is bound to use his eyes and ears, so far as there is an opportunity, and when by the use of those senses, danger may be avoided, notwithstanding the neglect of the railroad servant to give signals, the omission of the plaintiff to use his senses to avoid the danger is concurring negligence, entitling defendant to a non-suit."

The same doctrine was held in Morris & Essex R. R. Co. vs. Haslan, 4 Vroom. 149, and 33 N. Y. 147 ; Runyan vs. The Central R. R. Co., 1 Dutch. 357 ; Chicago & Rock I. R. R. Co. vs. Still, 19 Ill. 508 ; Chicago & Alton R. R. Co. vs. Gretzner, 46 Ill. 74 ; North Penn. R. R. Co. vs. Heilmann, 49 Penn. 62 ; The Bellefontaine R. W. Co. vs. Hunter, Adm'r, 33 Ind. St. 336 ; Harlan vs. St. L., K. C. & N. R. R. Co., *ante* p. 480.

In addition to the facts which are disclosed in the cases above cited, in the case at bar it appears that there was a board over the highway at the crossing with the words " Railroad Crossing ! look out for the cars ! " printed upon it in large letters. The statute requires the company to erect these at public crossings, and the duty thus imposed upon the company, certainly imposes a corresponding duty upon travelers on the highway to heed the warning given.

They have no more right to disregard it, than they would to disregard a similar warning from an individual stationed for that purpose by the company near the crossing. It would be a mockery of justice to require the company at considerable expense to

erect these boards of warning, and at the same time hold that it is of no benefit to the company in a suit for damages, by one who, disregarding the warning, goes upon the road at the crossing and gets injured by a passing train.

These remarks of course apply only to those who can see and hear, and to a time when the printed warning can be seen.

The instruction asked for by defendant at the close of plaintiff's evidence should have been given, and the judgment with the concurrence of the other judges, except Hough, J. and Norton, J. not sitting, is reversed.