ZIMMERMAN v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant*.

1. **Negligence**: CONTRIBUTORY NEGLIGENCE NOT EXCUSED, UNLESS. If the plaintiff in an action for personal injuries grounded on defendant's negligence, has himself been guilty of negligence contributing to the injuries complained of, he cannot recover, though the defendant be likewise guilty, unless the defendant, at the time he committed his negligent act, was aware of the danger to which the plaintiff was exposed.

2. **Railroad**: FAILURE TO RING OR WHISTLE. While failure to ring the bell or sound the whistle, as the train approaches a street crossing, constitutes negligence *per se* on the part of the railroad company, it

Zimmerman v. The Hannibal & St. Joseph Railroad Company.

does not necessarily entitle the plaintiff to a verdict against the company in a case where he was himself guilty of negligence.

3. —— : DUTY TO RING OR WHISTLE. The duty of ringing or whistling at a street crossing ceases as soon as the locomotive has passed the crossing. (R. S., § 806.)

4. —— : DUTY OF TRAVELER TO LOOK AND LISTEN FOR TRAIN AT CROSSING. It cannot be declared, as a matter of law, that a footman is bound, before crossing a railway track to stop, in order to look and listen for trains. That rule is applicable only to persons traveling in wagons or other vehicles which make a noise that would necessarily interfere with their hearing.

5. —— : ——. Every person about to go upon a railway track, is bound first to use his senses of sight and hearing to ascertain whether a train is approaching.

6. —— : RIGHTS OF COMPANY AND THE PUBLIC IN PUBLIC STREETS. The rights of the public are not subordinate to those of the railroad company at the crossing of a public street; but where the track runs along the street, the rights of the public are subordinate, and persons walking on the track must keep out of the way of trains.

7. **Instructions,** which group together facts which there is evidence to prove, and tell the jury the legal effect of those facts, if they find them to exist, are to be given in preference to such as deal in generalities.

8. **Contributory Negligence**: CASE ADJUDGED. Plaintiff, a man of mature years, in his right mind, with his eye-sight unimpaired, but deaf, without looking to see if a train was coming, went upon a railroad track and started down the track, when he was almost instantly struck and injured by a train approaching from behind. A short distance before reaching the track he passed a point where the train was in full view; and a sidewalk for the use of pedestrians ran along-side the track; *Held,* a case of negligence precluding recovery against the railroad company for the injuries sustained.

*Appeal from Hannibal Court of Common Pleas.*—HON. JOHN
T. REDD, Judge.

REVERSED.

*Geo. W. Easley* for appellant.

*David Wagner* and *Hatch & Hatch* for respondent.

· HENRY, J.—This is a suit by plaintiff to recover damages, for an injury received by him while walking on the defendant's railroad track, in the city of Hannibal, where the railroad runs over a street of said city, occasioned, as the plaintiff alleged, by the neglect of the employees of defendant to blow the whistle or ring the bell as required by the statute. He obtained a judgment for $4,000, from which the company has appealed. The defense set up in the answer was negligence of the plaintiff, which occasioned the injury, and a denial of the negligence imputed to defendant. The evidence for plaintiff was substantially as follows:

Plaintiff testified that he was about fifty-four years of age when the accident occurred, 24th day of January, 1875; that he got up early that morning to go to a mill for bran. There was lumber piled up between his residence and the railroad; saw no train, did not look around or back. The first thing he knew was when he got on the track, the cowcatcher struck him, and he was knocked down and dragged some distance by the train. If the whistle was sounded or the bell rung, he did not hear it. Had been living in Hannibal six years, and been on the railroad more or less every day; was in the habit of going over this crossing every day and walking on the track. Hearing, worse since the accident. Up to that time could hear the signals of the train. Could hear it now at his house. Could go to the same place and turn his back and hear the signals. Did not attempt to cross over the track. Wanted to go the quickest way to the mill. It was a better walk up Collier street. Could give no reason why he did not cross the road and walk on north side of the street. Got right between the rails; walked up to the road from his residence, and turned up the railroad track. Looked across for the train when he came out of his door; did not stop and look after he crossed the bridge over the creek, to see if a train was coming. His hearing was as good then as now. It was light enough to see a train, but couldn't see it from

his house on account of piles of lumber on both sides of the track. Was struck by the locomotive twenty or twenty-one feet west of the crossing. Did not hear the train until he felt the cow-catcher. Felt no jar on the track. Didn't look down the track to see if a train was coming. Couldn't tell why. His eyesight and sense of feeling were good. Couldn't tell the speed of the train; had been deaf for twenty-five years.

Dr. Thorndyke, the physician who amputated his arm, testified to the extent of his injury and the necessity for amputation; that the injury to the arm would not affect the hearing; did not know that plaintiff's hearing was better before the accident than since.

Wedgewood for plaintiff testified: The train, that morning, was going west. Witness, then an employee of defendant, signaled it to go on. This signal he gave about three minutes before he heard plaintiff's cry of distress. Saw plaintiff that morning coming across the bridge over Bear creek, before the accident. The train was then between the bridge and Hibbert's mill. Did not consider he was in any danger. There was no obstruction to plaintiff's view between the place where witness saw him, on the bridge, and the train. It was in fair view. He could have seen it, and was in plain and distinct hearing of it. He was forty or fifty feet from the train when he was crossing the bridge, and about forty feet from the main track of the Hannibal & St. Joseph Railroad, walking at, what witness called, a common jog. He further testified that plaintiff was deaf, and one had to talk to him very loud to be heard by him.

The testimony offered by plaintiff as to speed of train was conflicting, one witness fixing it at about fifteen miles another at about six miles an hour. The defendant's evidence tended to show the speed of the train to have been from six to eight miles an hour. The testimony for plaintiff was to the effect that neither the bell on the locomotive was rung nor the whistle sounded; while the engineer and

fireman on the train testified that the bell was continuously rung from a point eighty rods east of the crossing to the crossing, and that the whistle was blown at intervals. They were corroborated by a stranger who was at the depot waiting for a passenger car.

For plaintiff the court gave the following instructions :

1. It was the duty of the defendant's servants and agents, in the management of its locomotive and train under their charge, to exercise reasonable care and precaution to prevent injury to the person of plaintiff, and the failure on their part to exercise such reasonable care and precaution, would be such negligence as to make defendant liable for any injury resulting from such negligence.

2. In passing upon the question as to whether the servants and agents of the defendant were or were not guilty of negligence in the management of its locomotive and train, the jury should take into consideration all the facts and circumstances as proved by the evidence to have existed at the time when and the place where the injury occurred; and the jury should give to each fact and circumstance, and to the testimony of each witness, such weight only as the jury may deem such fact, circumstance or testimony entitled to, in connection with all the evidence in the cause.

3. Even if the jury should believe, from the evidence, that the plaintiff was guilty of negligence or carelessness which contributed to the injury, yet if they further believe, from the evidence, that the agents or servants of defendant, managing the locomotive or machinery of the defendant with which the injury was inflicted, might have avoided the said injury by the use of ordinary care and caution, the jury will find for plaintiff.

4. It was the duty of the defendant to commence ringing the bell or blowing the whistle at a distance of eighty rods from the crossing of Main street and keep ringing the bell or sounding the whistle until the locomotive and train had crossed said Main street; and if it ap-

pears, from the evidence, that, at the time of the accident, no bell was rung or whistle blown, the jury may infer negligence or carelessness in the agent or employees of the defendant, in the running and managing of the train, and their verdict should be rendered accordingly.

5. If the jury find for the plaintiff, they will, in estimating the amount of damages, take into consideration the age and situation of the plaintiff, his bodily suffering and mental anguish resulting from the injury received, and the loss sustained by the want of the limb injured and destroyed, and the extent to which he is disabled from making a support for himself by reason of the injury received.

6. The jury are the sole judges of the credibility of the witnesses who have testified in the cause, and if they believe from the evidence, that any witness has willfully sworn falsely in regard to any material fact at issue in the cause, they are at liberty to disregard the entire testimony of such witness.

Of its own motion the court gave the following:

1. Unless the jury find, from the evidence in the cause, that the servants and agents of the defendant were careless or negligent in the management of the train, and unless the jury further find that the injury was caused by such carelessness or negligence, the verdict should be for defendant.

2. If the jury find, from the evidence, that the plaintiff neglected to use a reasonable degree of care and caution, under all the circumstances, to avoid the injury, and that such negligence on his part contributed to produce the injury, they should find for the defendant, unless they further find that defendant's servants and employees could, under all the circumstances, by the exercise of reasonable care and caution on their part, in the management of the train, have prevented the injury.

3. The question as to whether the employees of defendant or the plaintiff, did, under the circumstances, use a

reasonable degree of care and caution to avoid the injury, is a question of fact to be passed upon by the jury, and in passing upon it, they should consider all the facts and circumstances proved in evidence.

The following asked by the defendant were refused:

1. It was the duty of the plaintiff when he arrived at the track of defendant's railroad, at the crossing described in the petition, to stop and look and listen and ascertain whether any train was approaching before he stepped upon said track.

2. If the jury believe, from the evidence, that plaintiff's hearing was impaired at the time of the injury in question, then it was improper for him to pass upon the track of the defendant's railroad at the point described in the petition, without first stopping at said track and ascertaining whether any train was approaching; and if they further believe, from the evidence, that the plaintiff, after stepping upon said track, turned and was walking westerly thereon, then they will find for the defendant, notwithstanding they may further believe, from the evidence, that the bell was not ringing at the time the plaintiff was struck; and notwithstanding they may further believe, from the evidence, that the fireman of said train saw the plaintiff approaching the crossing described in the petition, from seventy-five to one hundred feet from the track, on the fireman's side of the engine, and said engine was from one to two hundred feet east of said crossing at the time said fireman saw the plaintiff approaching said crossing; and notwithstanding they may further believe, from the evidence, that said train was running at a speed not exceeding fifteen miles per hour.

3. If the jury believe, from the evidence, that plaintiff resided in the city of Hannibal, on Main street, within 300 yards of the Hannibal & St. Joseph Railroad where it crosses said street, and that he was in the daily habit of traveling said street and crossing said railroad track for several years; that engines and trains were frequently pass-

ing during the day; that he was hard of hearing, and that there was no obstruction, for some distance before he reached the road, to prevent him from seeing the train approaching on the Hannibal & St. Joseph Railroad, if he had looked in that direction; and that he walked up to the road and got in the way of the train without looking to see if the train was approaching, then the injury was occasioned by his own fault and negligence, and the jury should find a verdict for defendant, unless they believe that the employees in charge of the train saw him and neglected to stop the train before it struck him, or to make diligent effort to stop it.

4. If the jury believe, from the evidence, that the plaintiff, when he approached the crossing described in the petition, neglected to stop and look and listen for an approaching train before passing on the track of the defendant's railroad, they will find for the defendant, notwithstanding they may further believe, from the evidence, that the employees in charge of the train in question neglected to sound the whistle for said crossing and also neglected to ring the bell as said train approached said crossing and to keep ringing it until said train had passed said crossing; and notwithstanding they may further believe that plaintiff was injured as alleged in his petition, provided the jury shall further believe, from the evidence, that the employees in charge of said train did not know that the plaintiff was hard of hearing, and did not know that the plaintiff was on the track at the time he got injured.

5. If the jury believe, from the evidence, that the plaintiff was deaf or that his hearing was impaired, then it was his duty before passing on the track of the defendant's railroad, at the point described in the plaintiff's petition, to stop at said track and look both up and down said track so as to ascertain whether any train was approaching; and if the jury believe, from the evidence, that the plaintiff neglected to take this precaution before stepping upon said track, and after stepping upon said track he turned and

was going westerly on said track with his back to the train described in said petition, they will find for the defendant, unless they shall further believe, from the evidence, that the engineer in charge of the engine attached to said train knew that the plaintiff was deaf or his hearing impaired, and could have prevented striking him, after discovering that he was upon said track as aforesaid.

The questions presented for determination by this record, have been so often passed upon, that we can but express surprise at the utter disregard by trial courts of the law, as announced by this court in repeated adjudications.

Instruction No. 3 given for the plaintiff is in direct conflict with what has been expressly declared to be the 1. NEGLIGENCE: contributory negligence, not excused, unless. law in the following cases : *Karle v. The K. C., St. Jo, & C. B. R. R.* 55 Mo. 476; *Isabell v. H. & St. Jo, R. R. Co.,* 60 Mo. 475; *Harlan v. St. L., K. C. & N. R. R. Co.,* 64 Mo. 480 ; *Same v. Same,* 65 Mo. 22 ; *Nelson v. A. & P. R. R. Co.,* 68 Mo. 593 ; *Cagney v. R. R. Co.* 69 Mo. 416. In *Isabell v. The R. R. Co., supra,* the court observed (Wagner, J.) : "In order to make a defendant liable for an injury when the plaintiff has also been negligent, or in fault, it should appear that the proximate cause of the injury was the omission of the defendant, *after becoming aware of the danger to which the plaintiff was exposed,* to use a proper degree of care to avoid injuring him." We have italicized that portion of the paragraph which the instruction under consideration ignores. Where negligence of the defendant and injury to the plaintiff are instantaneous and simultaneous, there is no propriety in giving the instruction with such a qualification, but when there is negligence on both sides, and sufficient time elapses between the negligence of defendant and that of plaintiff, which has exposed the latter to danger, for defendant to discover the danger to which plaintiff is exposed, and avoid injuring him, and there is evidence on that point, the

Zimmerman v. The Hannibal & St. Joseph Railroad Company.

qualification of the instruction above indicated, should be made.

The fourth instruction for plaintiff as to the implication of negligence from a failure to ring the bell and blow the whistle may be substantially correct, or rather what the court probably intended to declare as the law, is not doubted, but the instruction is so framed that it would likely mislead a jury. It is adroitly drafted and is creditable to the ingenuity of the counsel who prepared it. An instruction to the effect, that a failure of defendant to ring the bell or blow the whistle is negligence *per se*, was approved in *Karle v. R. R. Co.*, 55 Mo. 482, but the fourth instruction for plaintiff does not stop there, but concludes, " and their verdict should be rendered accordingly." In other words, if the company failed to comply with the requirements of the statute as to ringing the bell and blowing the whistle, the verdict should be for plaintiff, not that the jury should find from this fact negligence only, for the instruction had already told the jury to infer negligence from the failure to comply with this law; but that their verdict should be controlled by that fact. The instruction admits of that construction, and should not have been given in that form. In *Karle v. R. R. Co.*, *supra*, the court observed: " It does not follow, however, nor was the jury so instructed, that these violations of law, or any one of them made defendant liable; for in this, as in the other instructions, the qualification announced in the first and principal instruction on negligence, that this negligence caused the injury, was necessarily implied."

Another palpable error in this fourth instruction is the proposition that it was the duty of the defendant to ring the bell or sound the whistle until the locomotive and train had passed the crossing. Plaintiff and defendant's train were going west, and plaintiff was struck by the engine west of the crossing. The statute requires that the bell shall be rung continuously or the whistle blown at intervals until the engine shall have

2. RAILROAD: failure to ring or whistle.

3. ——: duty to ring or whistle.

crossed the street or road. (R. S., § 806.) The instruction declares that negligence may be inferred from the fact that the bell was not ringing, or the whistle blowing at the time of the accident. The accident occurred after the engine crossed the street, and the instruction imposed a duty upon defendant not prescribed by the statute.

The first instruction, for defendant, refused by the court, asserts a proposition not applicable to the case at bar. That it is the duty of a citizen approaching a railroad track, to look and listen for an approaching train before venturing upon it, is, we think well settled; but in those cases in which it has been held as a matter of law, that the traveler should stop and listen and look, the parties were traveling in wagons or other vehicles which made a noise, that would necessarily interfere with their hearing approaching trains. A footman, without stopping, might as readily see or hear an approaching train by turning his head in either of the directions from which one might approach, as by coming to a full stop, and the proposition asserted in the instruction, which is the law in a proper case, was inapplicable to the one at bar.

But it is urged, that it is not the duty of a citizen, approaching a railroad track, to look, or listen for an approaching train, but that he may rely upon the signals the company is required to give, and if not given, may venture upon the track without incurring the imputation of negligence. *Kennayde v. Pac. R. R. Co.*, 45 Mo. 255, is cited and relied upon as sustaining that doctrine. The observations of the court, Wagner, J., in that case, on this subject, were as follows: "The citizen, who, on a public highway, approaches a railway track, and can neither see nor hear any indications of a moving train, is not chargeable with negligence for assuming that there is no car sufficiently near to make the crossing dangerous." The expression "can neither see nor hear," implies an inability to see or hear on account of the topography of the

country, obstructions or other hindrances, and if the situation and surroundings be such that the traveler could not, even with proper endeavor, see or hear an approaching train, he may rely upon the required signals, venture upon the track, and not be chargeable with negligence. This we take to be the clear signification of the language of the court, but if its meaning be as counsel now contend, we do not hesitate to say that it has not the sanction of an elementary writer of any note, or a well considered adjudication of any appellate court in the United States.

The identical language of the court in that case, occurs in the opinion of the court in the case of *Ernst. v. Hudson River R. R. Co.*, 35 N. Y. 27, in which the facts fully justify the construction we have placed upon it. There is scarcely a point of resemblance between that and the case at bar. There, the injured party could neither see nor hear an approaching train. It is distinctly stated by the court, as one of the facts, that, "instead of his (plaintiff) having, from the hotel down, except opposite the station house, an open view of the northern track for a hundred rods, there was but one place in the whole distance where, even if he had been standing up and expecting a train, he could have seen it as far north as the ice house, which was within five hundred and ninety-four feet of the crossing." But another controlling fact in that case was, that the station at which the accident occurred was a flag station, "and it had long been the uniform practice of the company, known to and relied on by those who traveled the road, to give warning when a train was sufficiently near to make the crossing dangerous, by having a flagman in the middle of the track holding up a white flag if the train was to stop, and a red flag if it was to pass without stopping." On that occasion these precautions were omitted by the company. We notice this case thus particularly, because urged upon our attention by counsel for respondent "as the ablest, fullest and most satisfactory discussion of the question here presented, to be found in the books."

There is not the slightest analogy between that and this case, and nothing in the opinion there delivered conflicts with what this court has held to be the duty of a traveler approaching a railroad track.

The doctrine contended for is that, although a traveler could have seen if he had looked, or heard if he had listened, for an approaching train, yet, without looking or listening, he may go upon the track and not be chargeable with contributory negligence if run against and injured by a train of cars passing over the road; that he may shut his eyes and close his ears, and walk, ride, or drive across or along a railroad track, and if the company fails to blow its whistle or ring its bell, as required by law, his negligence is canceled by that of the company, and ceases to be a proximate cause of the injury, of which the negligence of the company is then to be regarded as the sole proximate cause.

Here, the plaintiff had lived for six years within a few blocks of where he was injured; was on and over the railroad every day; knew that the passage of a train over the road, at any hour, was not an improbability; could have seen the train from the bridge over Bear creek, and if he had not been deaf, could have heard it; could have seen it when he walked upon the track, if he had looked in the direction from which it was approaching; was in his right mind; his visual organs were unimpaired, but he did not look in that direction, and there were but two directions in which he had to look to see an approaching train, which could have injured him. He did not look or listen, but recklessly pursued his course upon the track of the railroad, between its rails, when there was ample space north of the track where he could have walked in safety; and yet it is urged that he was guilty of no negligence, but acted just as a prudent man would have acted under the circumstances. If, in such a case, a recovery can be had against a railroad company, the law might be declared in a very few words, that if any man crosses

or walks along a railroad track, and gets injured, he, or if he be killed, his representatives, may sue the company and recover damages; and all the difficulties and nice distinctions as to proximate and remote causes, and contributory and non-contributory negligence, which have so embarrassed the courts, would immediately vanish.

That the rights of the people in their own highways are not subordinate to those of the railway company, may

6. ——: rights of company and the public in public streets.

be conceded, as to that part of the highway which crosses the railroad, and that part not occupied by the railroad track, but as to so much of the highway as has been granted to the company for the track, the rights of the citizen are subordinate to those of the company, for if the rights were equal, the citizen would be under no obligation to get out of the way of a passing train, but the latter would have to stop in order that the former might quietly pursue his stroll. It would be utterly inconsistent with the duties and obligations of a railroad to shippers and travelers to hold that they have no more rights on their track than any citizen, and must regulate the speed and running of their trains to suit the convenience of pedestrians, who for pleasure, or otherwise, stroll along their tracks. In addition to the cases and text books cited in *Fletcher v. The R. R. Co.*, 64 Mo. 484, in support of the doctrine announced herein, we might present an overwhelming array of authorities, but content ourselves with a few additional citations.

In *The R. R. Co. v. Houston*, 95 U. S. 697, in an able opinion by Justice Field, the doctrine is very clearly stated as follows: "The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employees in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into a

place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others." The case of *The Continental Improvement Co. v. Stead,* 95 U. S. 161, decided by the same court at the same term, October, 1877, is cited by respondent's counsel as in conflict with *R. R. Co. v. Houston.* We do not, and certainly the Supreme Court of the United States did not think so. All the judges concurred in both cases except Justice Harlan, who did not sit in the latter case. But, if the two are irreconcilable, we are satisfied that the latter is sustained by reason and authority.

The same doctrine is maintained in *The L. S. & M. S. R. R. Co. v. Hart,* 87 Ill. 529, in which *Fletcher v. The R. R. Co.,* 64 Mo. 484, and *Harlan v. The R. R. Co.,* 64 Mo. 480, are cited and approved; and the following language of Judge Sheldon, who delivered the opinion of the court, is very pertinent here: " This court has time and again decided that it was the duty of every person about to cross a railroad track to approach cautiously, and endeavor to ascertain if there is present danger in crossing, as all persons are bound to know that such an undertaking is dangerous, and that they must take all proper precaution to avoid accident in so doing, otherwise they could not recover for injury thereby received. With increased force does the rule apply and a higher degree of vigilance is required when, as in the present case, a party is not lawfully upon the track at a crossing or upon a public highway, but is walking along laterally upon the track, as a way of convenience, where it is exclusively the private right of way of the railroad company."

The third instruction asked by defendant grouped together facts which the evidence on both sides tended to
7. INSTRUCTIONS.     prove, and asked the court to declare that

those facts, if found, constituted such negligence on plaintiff's part, as precluded him from recovering. It is for the jury to find the facts, but it is the province and duty of the court to declare whether, or not, facts which there is evidence tending to prove, constitute negligence. Instructions of that character are far more satisfactory guides to the jury than those which deal in vague generalities, such as those given by the court of its own motion. An instruction telling the jury that one approaching a railroad track is required to use a reasonable degree of care and caution or the care and caution which a reasonably prudent man would exercise under such circumstances to avoid danger, leaves them at sea, each one to determine for himself what such care and caution is, while the court, in every instance in which such an instruction is given, has in its mind, the use of the senses of hearing and sight and feeling, as the care and caution which prudent men would exercise in such a case. It is by the use of these senses that prudent men ascertain whether they are in danger from an approaching train, and it is the duty of the court so to declare, and not leave each member of the jury to determine for himself what is reasonable care and caution.

At the close of plaintiff's case, the defendant asked and the court refused an instruction in the nature of a de- 8. CONTRIBU TO R Y murrer to the evidence, which should have NEGLIGENCE: case adjudged. been given. His own testimony, and that of his witness, Wedgewood, showed that plaintiff went upon the track, without having endeavored in any manner whatever to ascertain whether there was a train approaching, and that he had but to look east, or listen, to learn that a train was then near and approaching the crossing, going west, which would in a few seconds pass over that very portion of the railroad track that he was about to walk upon in going to the mill. To uphold a judgment in such a case would be to override what this court, and a vast majority of the courts of this country, have repeatedly

held to be the law. The judgment is reversed. All concur, except Norton, J., who thinks that the only error committed was in giving for plaintiff his third and fourth instructions.