# MARYLAND REPORTS.

## OCTOBER TERM, A. D., 1891.

AUGUST FENNEMAN, trading as CONSUMERS' ICE COM-
PANY *vs.* CALEB T. HOLDEN.

*Negligence—Action for Personal injury in Crossing Street—*
*Degree of Care.*

In an action for injuries sustained by the plaintiff, in consequence
of being run over by the defendant's ice wagon while crossing a
street, the plaintiff having testified that he was seventy-five years
old, and very hard of hearing, it was HELD:

1st. That the defendant was entitled to have the jury instructed
that if they found the plaintiff was deaf, or hard of hearing,
this infirmity "cast on him the duty of being more careful in
keeping a proper look-out for passing vehicles than if he was in
the possession of his faculty of hearing."

2nd. That ordinary care, such as a reasonably prudent man, at his
age and condition as to hearing, would be expected to exercise,
was all that could be required of the plaintiff; and a prayer
of the defendant was properly rejected as misleading, which
asked the Court to deny the plaintiff's recovery, if "when
crossing the street he could have seen the wagon approaching
in time to avoid it *if he had looked;*" the prayer failing to
state with what degree of care it was his duty to look.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

1                    v. 75.

*Exception.*—At the trial the plaintiff offered six prayers, the second and fifth of. which were refused, and are omitted, the others are as follows:

1. If the jury find from the evidence that the plaintiff was in the act of crossing Baltimore street from the southwest corner of Baltimore and Gay streets to the northwest corner of said streets, on the flagstones placed there for the use of pedestrians, and that when he reached the centre of said street at a place on said flagstones between the railway tracks on said street, he was prevented from continuing his way by a horse and wagon of the defendant, driven by a servant of the defendant; and if they further find that said horse and wagon was being driven at an immoderate rate of speed on said street, and that the plaintiff was placed in peril and danger, and in seeking to escape from said peril and danger was struck by the wheel of said wagon and injured; and if they further find that the injury to the plaintiff was directly caused by the want of ordinary care and prudence of the said servant of the defendant, and that the plaintiff used reasonable care and caution in crossing said street, then the plaintiff is entitled to recover in this action.

3. The degree of care required of the plaintiff to entitle him to recover, is simply such as should reasonably be expected from an ordinarily prudent person in his situation, that is to say, reasonable care. If he exercised such degree of care, though he may have been guilty of some negligence or want of caution, he is still entitled to recover for any injury sustained in consequence of the defendant's negligence.

4. If the jury find, upon a consideration of all the facts and circumstances given in evidence, that the defendant, by his servants, did not exercise ordinary care, and that the plaintiff, by the exercise of ordinary and reasonable care and caution on his part, could not have avoided the

Fenneman *vs.* Holden.

consequence of the defendant's negligence, then the plaintiff is entitled to recover in this action.

6. If the jury find for the plaintiff, then in estimating the damages, they are at liberty to consider the health and condition of the plaintiff before the injury complained of, as compared with his present condition in consequence of the said injury, and whether the said injuries are in their nature permanent, and how far they are calculated to disable the plaintiff from engaging in those business pursuits for which in the absence of said injuries he would have been qualified; and also the physical and mental suffering to which he has been subjected by reason of said injuries, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which the plaintiff has suffered.

The defendant offered the following prayers:

1. That the plaintiff is not entitled to recover in this action, because the undisputed evidence shows that the negligence and want of due care on the part of the plaintiff directly contributed to the accident complained of, and the verdict of the jury must be for the defendant.

2. If the jury find from the evidence that the accident complained of was in any degree owing to a want of due care and caution at the time of the accident on the part of the plaintiff, directly contributing thereto, then their verdict must be for the defendant.

3. If the jury shall believe from the evidence, that the accident was directly caused by the concurrent negligence of the plaintiff and the servant of the defendant, and that it would have been avoided by due and proper care on the part of either said plaintiff or said servant of the defendant, then their verdict must be for the defendant without regard to whose negligence was the greater.

4. If the jury shall find from the evidence that there was negligence on the part of defendant, or his servant, in the management of the ice wagon which caused the

accident, if they find the accident so caused; but shall further find that there was a want of prudence and proper care on the part of the plaintiff in attempting to cross the street at the time when he did, without keeping a proper look-out for vehicles about to pass, and that such want of prudence and proper care on his part directly contributed to the accident, then the verdict of the jury must be for the defendant; and in passing upon the question of want of proper care on the part of the plaintiff, the jury are instructed that the deafness of the plaintiff, if they find he was deaf or hard of hearing, casts upon him the duty of being more careful in keeping a proper look-out for passing vehicles than if he were in the possession of his faculty of hearing.

5. If the jury find from the evidence, that the servant of the defendant was negligent in the driving of the ice wagon which caused the injury, yet, if they further find that the plaintiff, when about crossing over the street as testified, could have seen the wagon approaching in time to avoid it if he had looked, then their verdict must be for the defendant.

6. If the jury find from the evidence that the plaintiff attempted to cross over Baltimore street, from south to north, immediately in front of an approaching street car going east, on the south track on said street, and having avoided the horses of the street car, was prevented from going further by an ice wagon at that time going west on the north track, and stood between the track, and whilst so standing was struck by the hub of the front wheel of the ice wagon, and injured as testified to, then the verdict must be for the defendant even though the jury may find the defendant's servant was negligent in the driving of the ice wagon.

The Court (STEWART, J.,) granted the first, third, fourth and sixth prayers of the plaintiff, and the second and third prayers of the defendant, and rejected the first,

fourth, fifth and sixth prayers of the defendant, and the second and fifth prayers of the plaintiff.

The defendant excepted, and the verdict and judgment being 'against him, he appealed.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, and MCSHERRY, J.

*Edgar H. Gans,* (with whom was *B. Howard Haman,* on the brief,) for the appellant.

*Wm. J. O'Brien,* (with whom was *Wm. J. O'Brien, Jr.,* on the brief,) for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellee sued the appellant for injuries suffered in consequence of being struck by an ice wagon of the appellant, driven by appellant's servant, alleged to have been driven at reckless speed into a street which appellee was crossing.

Appellee testified that he was seventy-five years old, and was attempting to cross Baltimore street from its southwest corner, where Gay street intersects it; that the way seemed clear when he started, but when he got to the middle of the street he saw an ice wagon coming down Gay street, southward, at a reckless speed; that it turned in Baltimore street cutting him off from crossing the street; that he attempted to get out of its way, but could not do so, and was struck by the hub of the ice wagon, and had his leg broken; that when the accident happened he saw a street car, just above him on Baltimore street, and that when he was struck he was between the North and South street car tracks, near the flagging; that he looked round and saw nothing in his way, and it was his habit in crossing the street to exercise care, because he was hard of hearing; that he was strong

and active for his age. On cross-examination, he said he was *very hard of hearing,* and did not know of his danger until some one called out to him to look out; that he did not see the ice wagon until it was right on him, and then he tried to get out of the way by running up the track, when he was struck; and that he saw no street car either before or after the accident.

Appellant also proved by the conductor of the street car, that he saw the plaintiff crossing the street as he was taking his car down Baltimore street; and when the car got to the switch, the plaintiff was between the horses of the street car and the ice wagon. By the driver of the car he proved that he saw the plaintiff cross the street, and when he got part of the way the ice wagon suddenly turned into Baltimore street, when the plaintiff got scared and turned towards the street car, and ran between the tracks "some little distance," when the ice wagon going west on the north track, driven at a reckless speed struck him; that the plaintiff was between the horses of the street car and the ice wagon; and that if the wagon had been driven on the street and not on the track, the accident would not have occurred.

The defendant proved by a witness riding on the front platform of the street car that he saw the whole accident, and that the plaintiff attempted to run across the street in front of the horses of the street car going east on Baltimore street; and that he just escaped being struck by the horses of the street car; and that when he got to the middle of the street between the north and south tracks of the street car, he was struck by the hub of an ice wagon going west; that when the plaintiff got to the middle of the street the horses of the street car had already passed him. On cross-examination he said he called to the boy driving the wagon to look out, before plaintiff was struck.

Upon this state of facts numerous prayers were granted and refused on the part of the plaintiff, and this appeal

only involves the correctness of the Court's action in respect to these prayers. The first prayer of the defendant was rejected, but appellant's counsel waives that prayer in this Court, and all objection to its refusal.

The defendant's fourth prayer asked the Court to instruct the jury, that if they found the plaintiff was deaf, or hard of hearing, that this infirmity "cast on him the duty of being more careful in keeping a proper look-out for passing vehicles than if he was in the possession of his faculty of hearing."

The rejection of that prayer was plainly wrong. It is text book law, and fully sustained by decisions of high repute, that an infirmity in any of the senses makes it necessary for a person to be more vigilant and cautious in the use of his other senses. The importance and necessity for this rule is especially illustrated in this case. Here was a plaintiff attempting to cross a public street, upon which street cars were running, and across which ran another very public thoroughfare, in and down which the wagon, which inflicted the injury, was coming with rapidity. Being very hard of hearing, as he testified, he could not rely on his hearing for notification of an approaching vehicle, therefore must rely on his sight. He says he did *not* see either the street car coming in one direction, nor the wagon coming directly in front of him. It was therefore very important that the jury's attention should be specifically called to his deafness, that they might consider especially whether he had been *correspondingly careful* in looking for approaching vehicles before crossing the street, and in the act of crossing. The rule does not impose on persons more than ordinary care; "but the standard of such care is fixed by that which prevails with ordinary men of their class." In the 2d vol. of *Sherman and Redfield on Negligence,* sec. 481, the rule is most clearly set forth and defined. They say: "Thus a deaf man should look

up and down the track even more closely than might be necessary if he could hear well.'' They cite numerous authorities for this statement of the law, all of which fully sustain the proposition. 1 *Thompson on Negligence,* 430, states the law in the same way. *Illinois Central R. R. Co. vs. Buckner,* 28 *Ill.,* 299; *Cleveland, Columbus and Cincinnati R. R. Co. vs. Terry,* 8 *Ohio St. Rep.,* 585; *Ormsbee vs. Boston and Prov. R. R. Corp.,* 14 *R. I.,* 102; *Zimmerman vs. The Hannibal and St. Joseph R. R. Co.,* 71 *Mo.,* 476; *Purl vs. The St. Louis, &c. Railway Co ,* 72 *Mo.,* 172; *Central R. R. Co. of New Jersey vs. Feller,* 84 *Penn.,* 229.

The fifth prayer of the defendant was properly rejected, beceause it was misleading. It asked the Court to deny the plaintiff recovery if, "when crossing the street he could have seen the wagon approaching in time to avoid it if he had looked.'' With *what degree* of care it was his duty to look is not alluded to. Although it might have required extraordinary care and effort to have seen the wagon,—a degree of diligence and care to which he ought not to be held,—still, under such circumstances even he could not recover under that prayer. Ordinary care, such as a reasonably prudent man at his age and condition as to hearing would be expected to exercise, was all that could be required of him. This prayer left the jury to apply a more rigid and exacting rule of care.

The sixth prayer of the defendant was rightly refused. If the plaintiff had been injured by the street car by reason of his having crossed the street immediately in front of the horses, which were moving, a very different question would be presented; but his negligence in that regard cannot affect this case, except as reflecting light on the character of care he was observing in crossing the street. The prayer puts the fact very properly, but asks the jury to draw an unwarranted inference from the

Fenneman *vs.* Holden.

act as connected with the injury inflicted by the ice wagon. The prayer is infirm in making no reference to the care of the plaintiff in respect to failure to see or avoid the ice wagon; and punishes the owner of the ice wagon for simply being in the plaintiff's way, without alluding to any element of care necessary to have been observed by its driver as respects the plaintiff.

The third prayer of the plaintiff was granted, we think, in error. In defining the degree of care required of the plaintiff it wholly ignored the question of the deafness of the plaintiff, which would subject him, as we have already said, to the necessity of more diligently using his faculty of sight. After the word "situation" something should have been added which would draw the jury's attention to his deafness to which the plaintiff testified. Besides this defect, in attempting to conjoin with that definition of care required of him the idea that, though he may have been somewhat negligent, still he might recover, if by the exercise of reasonable care the defendant's servant could have avoided the accident, the prayer becomes self-contradictory in making him both reasonably careful and somewhat negligent; and in that paragraph of the prayer he does not correctly put the rule of liability in cases of mutual negligence.

With respect to the criticism of appellant's counsel upon the concluding sentence of the plaintiff's first prayer, we think that, if that prayer stood by itself, without any qualification by other instructions, it would be misleading; but qualified as it is, by the second and third prayers of the defendant, we should hesitate to reverse for that defect if there were no other errors to reverse on; but, as the case must go back for a new trial, we suggest that the suggested defect in that prayer be corrected, and then it will be liable to no just criticism as now, for not calling attention to the reasonable care which it was the duty of the plaintiff to exercise.

Ricards, Leftwich & Co. *vs.* Meyer & Krose.

For the errors we have mentioned the judgment must be reversed, and a new trial must be had.

*Judgment reversed, and
new trial awarded.*

(Decided 12th November, 1891.)