## LAKE SHORE AND MICHIGAN SOUTHERN RAILROAD CO.

### *v.*

### JOHN HART.

87   529
52a 419
87   529
57a 157
87   529
86a 538
87   529
f94a ² 87
87   529
99a ⁴297
87   529
114a ²233

1.   NEGLIGENCE—*rule as to train passing station.*   A rule of a railway company prohibiting freight trains from passing between a station house and a standing passenger train while receiving or discharging passengers, has for its object the protection of passengers between the standing train and the passenger house, and not that of persons, at a distance away, carelessly walking on the track; and a failure to observe the rule, of itself, will not render the company liable for an injury to a person carelessly walking upon the track, some distance from the station.

2.   SAME—*on part of injured person.*   Where a plaintiff carelessly walked upon the track of a railroad, only a few steps south of an approaching train, without looking north to see if there was danger, and paid so little heed as not to hear the bell or whistle when sounded, or notice the calls of persons warning him of danger, and was run over by the engine, not moving at a high rate of speed, and there was no proof that the servants of the company wantonly or wilfully caused the injury, it was *held,* that the plaintiff's negligence was so gross as to preclude a recovery of damages by him, in a suit against the company.

3.   SAME—*excuse for want of care.*   It is no excuse for a party entering upon a railroad track to travel along the ties, in not first looking behind him to see if any train is approaching, that the company had, before, been in the habit of moving its trains going in such direction over another and different track.

4.   It is the duty of every person about to cross a railroad track to approach it cautiously, and ascertain if there is danger in crossing; otherwise he can not recover for an injury thereby received; and a still higher degree

34—87 ILL.

of care and vigilance is required where the party is, without right, traveling on foot along the track.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action against the Lake Shore and Michigan Southern Railroad Company, to recover damages for injuries received from being run over by a train of the defendant.

There was a verdict for the plaintiff for $10,000, a remittitur by him of $5000, and judgment for the residue, from which defendant appeals. The accident occurred near a station known in the record as the "Car Shops," on a parcel of land which is owned, and the principal portion of which is used, by the Chicago, Rock Island and Pacific Railroad Company for machine shops and similar purposes. It extends from 47th to 51st streets, in the town of Lake, which lies south of and contiguous to the city of Chicago. Appellant, the Lake Shore and Michigan Southern Railroad Company, has a right of way along the east side of this parcel of land, on which it has constructed, and has for several years operated, two tracks; one is a main, or through track; the other is a side track, intersecting the main track by the side of a long platform in front of the station house.

The nearest street north of the station is 47th street, and the nearest street south of it is 51st street, and no street is opened leading to the station, which is located where 48th street would be, if opened. A fence extends from 47th to 51st street along the east line of this parcel of land. The platform at the station is connected with a stile over this fence, by which there is access to the paths, passing over the open prairie, extending from the station to State street, which is east of and parallel with the fence. It was the custom of both railway companies, in operating their through trains, to move them south over the Rock Island main track, and to move the same trains north over the Lake Shore track. It would seem

to have been otherwise as to switching engines and trains being switched in the yards between 42d and 51st streets.

On the 18th day of July, 1874, at about 4:15 o'clock P. M., the Rock Island company started a suburban, or what is known in the record as a "dummy" train, from its depot in the city of Chicago, south. On this train appellee was a passenger. Within a few minutes of the same time, appellant, the Lake Shore company, started south from its yard at 43d street, a train consisting of from 20 to 26 empty cattle cars, drawn by the yard or switch engine, for the purpose of switching the same on the track which intersects the main track at the side of the long platform at the car shops station. While both trains were moving in the direction of the station at the Rock Island car shops, the dummy train passed the switching train at or near 47th street, about 800 feet north of the station. The dummy train stopped at the west side of the long platform, for the purpose of discharging passengers. Appellee left the car in which he was riding, walked off the south end of the platform, and a further distance of between 25 and 40 feet, and then stepped into the gangway of the dummy engine, where he commenced a conversation with the fireman or engineer. When the dummy engine, upon which he was standing, had moved about 100 feet, he got off from it, and walked obliquely toward the Lake Shore track; he entered upon the track directly in front and within a few feet of the approaching engine from the north, without looking north to see if an engine was coming, and, proceeding south upon the track, was almost immediately struck by the engine and run over, not having advanced more than four or five steps.

Mr. C. D. Roys, and Mr. Thos. F. Witherow, for the appellant.

Mr. E. A. Otis, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The facts set out in the declaration claimed by appellee as constituting negligence on the part of the railroad company, are, in the first count, in omitting to cause a bell to be rung or steam whistle to be sounded, or other signal to be given; in the second count, in running its locomotive and train by the station mentioned at a high rate of speed, without sounding the whistle or ringing a bell; and in the third count, in running a freight train between a standing passenger train at a station, and the passenger house, in violation of a rule of the company in that behalf.

As to ringing a bell or sounding a whistle, although there was some conflict in the evidence, the clear preponderance of it would seem to be in favor of the bell being rung and the whistle sounded.

The train would not seem to have been run at a high rate of speed.

As to the rule relating to the movement of freight trains between passenger trains and stations, it is as follows: "When passenger trains are at stations, receiving or discharging passengers, freight trains must not pass between the standing train and passenger house, and passenger trains must run carefully when passing the standing train."

This rule we do not consider has application to the case. The testimony shows satisfactorily that, at the time of the accident, there was no passenger train at the station "receiving or discharging passengers." It had discharged and received the passengers for that station, and was moving away from it. The rule was for the protection of passengers between the standing train and the passenger house, and not for the protection of persons who were quite a distance away, carelessly walking on the track. The rule was for the government and information of employees, and it was the testimony that switch trains operating in the yards of the company were not required to observe the rule.

But, we conceive, no such negligence as is here alleged would give a right of action, under the circumstances of such want of care and caution on the part of the plaintiff as is exhibited in this record. Appellee entered upon the track directly in front and within a few feet of the approaching engine from the north, without looking north to see if an engine was coming, as he admits himself, and others assert, and seemingly without listening for bell or whistle, or taking any precaution to ascertain whether or not he was in danger. He was so absorbed, apparently, in something else, that he could not hear calls coming to him from two directions, warning him of danger. The track was straight for two miles north. At the time, the engine had passed the switch, and the engineer, supposing the track was clear in front of him, was looking back to receive the signal of the switchman, which would indicate when the last car in the train was over the switch. There is no pretense that the engineer saw appellee before the engine struck him. There is no evidence going to show that the employees of appellant wantonly or willfully caused the injury.

Appellee alleges, in excuse of his going upon the track as he did, that the company had provided no means of exit; that the station was so situated that it was necessary for the public to pass over the track in going from the station to 51st street, and that it was notoriously used for that purpose. Appellee was going along upon the track, in the use of it as a way to reach his home, which was on State street, south of 51st street, for which purpose he would go south upon the track to 51st street, thence on that street east to State street, thence south, home. Between the station house and State street, on the east, there was a large space of open prairie, over which were paths to State street, to which paths access was easy by way of the stile at the fence at the south end of the depot. This way across the prairie to State street was as direct to his home as the one by which appellee was proceeding. By the side of the track he was traveling on, between it and the Rock Island

main track, was ample space in which persons could pass from 51st street to the depot, without danger from either train. By the side of the fence, along the east side of this parcel of land, there was abundant room to travel safely along. There were thus three other safe ways of exit. All that can be said for not using any one of them is, that the walking was not so good as upon the track, between the rails. This, of course, did not justify appellee in taking the dangerous way, except upon the condition of assuming the risk of the perils he might encounter.

In excuse for not using any precaution to ascertain whether there was any train approaching from the *north*, appellee urges the practice of the roads to run all trains south from Chicago on the Rock Island track, and all trains north, towards Chicago, on the Lake Shore track; and that, therefore, in going upon the Lake Shore track, he was only bound to look *south* to see if any train was coming from that direction. Appellee was not justified in relying upon any such practice, as the result showed. The companies had the right to change such practice at any time, and to run their trains at all times in either direction, and any dependence upon such former practice was at appellee's risk. This practice before, did not excuse the exercise of caution and vigilance in looking for approaching trains in *both* directions. Besides, the proof showed satisfactorily that this practice did not prevail as to switching engines and trains being switched in the yards between 42d and 51st streets.

This court has, time and again, decided that it was the duty of every person about to cross a railroad track, to approach cautiously, and endeavor to ascertain if there is present danger in crossing, as all persons are bound to know that such an undertaking is dangerous, and that they must take all proper precaution to avoid accidents in so doing, otherwise they could not recover for injury thereby received. Among the later decisions are *Chi. and Northwestern Railroad Co.* v. *Sweeney*, 52 Ill. 325; *Chicago, Burlington and Quincy Railroad Co.* v. *Van Patten*,

64 id. 510; *Illinois Central Railroad Co.* v. *Godfrey*, 71 id. 500; *Illinois Central Railroad Co.* v. *Hall*, 72 id. 222; *Chicago, Burlington and Quincy Railroad Co.* v. *Damerell*, 81 id. 450; *Illinois Central Railroad Co.* v. *Hetherington*, 83 id. 510; and see *Lake Shore and Michigan Southern Railroad Co.* v. *Miller*, 25 Mich. 274; *Harlan* v. *St. L., K. and N. Railroad Co.* 64 Mo. 480; *Fletcher* v. *The Atlantic and Pacific Railroad Co.* id. 484; *Gorton* v. *The Erie Railway Co.* 45 N. Y. 662; Wharton on Negligence, § 384.

With increased force does the rule apply, and a higher degree of vigilance is required, where, as in the present case, a party is not lawfully upon the track at a crossing, or upon a public highway, but is walking along laterally upon the track as a way of convenience, where it is exclusively the private right of way of the railroad company.

There was in the present case such palpable failure in the exercise of due care and caution on the part of the appellee as to preclude him from any right of recovery.

The judgment will be reversed.

*Judgment reversed.*

WALKER and DICKEY, J.J., dissent from the views expressed, and from the conclusion of the court in this case.