Frank T. Kinnare, Administrator, etc., of Charles Wistrand, v. The Chicago, R. I. & P. Ry. Co. and The Lake Shore & M. S. Ry. Co.

1.   COMPARATIVE NEGLIGENCE—*The Doctrine Abolished.*—The doctrine of comparative negligence as announced in the earlier cases, is no longer the law of this State.

2.   ORDINARY CARE—*Defendant's Negligence.*—The doctrine announced in the later cases requires as a condition to recovery that the person injured must be in the exercise of ordinary care for his own safety, and that the injury was the result of the defendant's negligence.

Memorandum.—Action for personal injuries.   In the Superior Court of Cook County; the Hon. GEORGE F. BLANKE, Judge, presiding.   Verdict for the defendant by direction of the court; appeal by plaintiff. Heard in this court at the October term, 1894, and affirmed.   Opinion filed January 28, 1895.

WILLIAM H. SISSON and CLARENCE F. GOODING, attorneys for appellant.

ROBERT MATHER, W. H. STEAD and HENRY S. WALDRON, attorneys for appellees.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

Charles Wistrand, deceased, was, when struck and killed by a moving car in the car yard of appellees, a car washer

and cleaner employed by the appellee, the Lake Shore &
Michigan Southern Railway Company, and performed his
work in said company's passenger car yard extending from
Harrison street to Polk street, in the city of Chicago. He
had worked there in that capacity for three or four years.

The car yard was a block wide and contained a great
many tracks and switches upon which the passenger trains
of both appellees were made up, and through which all
trains entering or leaving the passenger station of the appel-
lee companies at Van Buren street, passed.

It was the habit to switch cars continually, back and
forth, on all the tracks in the yard, the main tracks, so called,
being exempt from such use only when in actual use by
departing or incoming trains, and the deceased from his long
employment there must have been familiar with such cus-
tom, and it was his duty to wash and clean the cars that
were so switched about.

The switching was mainly done by shunting the cars by
the force of a locomotive. When sufficient speed had been
obtained the locomotive was uncoupled and the car allowed
to proceed in charge of a brakeman who rode it.

The first that was seen of the deceased, just before he was
killed, was when he stepped from the west side of the rear
car of a dummy train that was going through the yard
toward the north, and was about stopping or had stopped
near Harrison street, in order to have a switch properly
placed before it could proceed into the station.

Upon a track some fourteen or sixteen feet west of and
parallel with the track upon which the dummy train was
going, a shunted baggage car that was being also run into
the station, was moving at the usual rate of speed north-
ward in the same direction that the dummy train was headed
for.

What then happened is best told by a witness who was
in charge of the brake of the baggage car and stood at the
brake on its north end. He testified:

" I noticed him (the deceased) step across from the dummy
when I saw him start to go to the tracks. I hollered at

him.   He stepped right in front of the baggage car and it went over him.   He was between the dummy and baggage car when I hollered at him first, but he didn't seem to pay any attention.   He was thinking about something else, I suppose.   He stepped about three feet in front of the baggage car and it went over him.   *   *   *   I twisted her (the brake) up so hard as I could to stop.   I hollered, too, of course.   I stopped the car as soon as I could.   *   *   *   It ran about three or four car lengths, I guess."

And on cross-examination by the appellees the same witness said :   " Wistrand (the deceased) was between the dummy and the baggage car coming across over.   The distance between the tracks is fourteen or sixteen feet.   He was about the middle of the track when I hollered.   Then he stepped right across the track.   He was about three feet from the end of the car when he stepped on.   I called to him and hollered to him loud.   He did not pay any attention.   He did not seem to bother."

The baggage car was being moved into the station to make up an outgoing train, and the track upon which it was passing was the principal track for outbound trains, and the track upon which the dummy train was moving was the principal one for inbound trains.

The evidence tends to show that the deceased after leaving the dummy train looked only toward the north, or toward the car that he had left, and not toward the south, which was the direction from which the baggage car was approaching.

No evidence was offered by the appellees, and at the conclusion of appellant's case the court instructed the jury to return a verdict for the defendants, the appellees here.

The question arises, was it error to take the case from the jury, or, in other words, was the appellant entitled, as a matter of law, to recover upon the showing made.

Omitting discussion of whether, as contended by appellees, the men engaged in switching the baggage car were fellow-servants of the deceased, we will briefly notice the single question argued here by the appellant.

The facts stated comprise in substance the circumstances under which the deceased met his death.

It is contended that the deceased had a right to rely upon the fact that the track upon which he was killed was what was known as the outgoing or south-bound track, and that he was therefore excused from looking in any direction except that from which outgoing trains would approach him, or that if he was at all negligent in not looking in the other direction his negligence was slight, and that the negligence of the appellees was gross in comparison, and therefore a recovery should have been had, or that the evidence should have been submitted to the jury.

It is said in L. S. & M. S. Ry. Co. v. Hessions, 150 Ill. 546:

" We have repeatedly held, in effect, in the later decisions * * * that the doctrine of comparative negligence, as announced in the earlier cases, was no longer the law of this State, and it is to be no longer regarded as a correct rule of law applicable in cases of this character.

The doctrine announced in the later decisions, as applied to this class of cases, requires, as a condition to recovery by the plaintiff, that the person injured be found to be in the exercise of ordinary care for his own safety, and that the injury resulted from the negligence of the defendant."

We fail to find in the evidence any near approach to the exercise of ordinary care by the deceased for his safety. He stepped from a train in a yard where the switching of cars was continually going on, and without looking in but a single direction, walked a distance of several feet with apparently no heed of his surroundings, and placed himself directly in front of a moving car when no more than three feet from it. The slightest attention on his part would have shown him the danger he was incurring, and if he chose to avoid the exercise of any diligence, others should not be held responsible. He should have looked in both directions. Some criticism of the testimony of one of appellant's witnesses that he " thought " the deceased was looking at the car he got off, is indulged in by appellant's counsel, but the witness was his own, and it was said in an-

swer to a question of his own, and no effort was made to have it struck out.

The deceased was accustomed to the system of switching which prevailed in the yard, and must have known that the track upon which outgoing trains passed must necessarily be used, as it always had been, to back cars into the station upon, in order that they might make up the trains that should pass out.

The case of C. & N. W. R. R. C. v. Sweeney, 62 Ill. 325, is particularly in point; and the language of the court in L. S. & M. S. R. R. Co. v. Hart, 87 Ill. 529, and Austin v. C., R. I. & P. Ry. Co., 91 Ill. 35, and in C. & N. W. Ry. Co. v. Kane, 50 Ill. App. 100, with reference to the duty of persons similarly situated, is applicable to this case.

The judgment of the Superior Court was right and will be affirmed.