THE BELT RAILWAY COMPANY OF CHICAGO

*v.*

MARTIN SKSZYPCZAK.

*Opinion filed February 21, 1907.*

RAILROADS—*when track repairer is guilty of negligence.* An experienced track repairer working at the crossing of his employer's railroad with the double track of another company is guilty of negligence, as a matter of law, where he kept a lookout for trains in one direction only, whereas he had not looked for ten minutes in the other direction, although he knew that the engine which struck him had passed that way to a water tank half a mile away and must return for its train, and although the engine and cars were constantly in plain view had he raised his eyes and looked. (*Indiana, Illinois and Iowa Railroad Co.* v. *Otstot,* 212 Ill. 429, distinguished.)

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

SCOTT, BANCROFT, LORD & STEPHENS, (WILLIAM J. HENLEY, of counsel,) for appellant.

HENRY HORNER, Jr., and J. A. BLOOMINGSTON, for appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

On March 27, 1901, Martin Skszypczak, the appellee, brought an action of case in the circuit court of Cook county against the Belt Railway Company of Chicago, the appellant, to recover damages for personal injuries alleged to have been sustained by appellee on July 31, 1900, through the negligent operation of one of appellant's engines attached to and pushing freight cars. A trial before a jury resulted in a verdict for $12,500 in favor of appellee. The circuit

court required a *remittitur* of $5500 from this amount and entered judgment for $7000. The judgment of the circuit court has been affirmed by the Appellate Court for the First District, and appellant prosecutes this appeal to reverse the judgments of the Appellate and circuit courts.

The declaration charges that the defendant negligently ran its train upon the plaintiff at the intersection of the defendant's track with the track of the Illinois Central Railroad Company, while plaintiff was at work at such intersection for the latter company.

No evidence was offered by the appellant in the circuit court. At the close of the evidence introduced by appellee, appellant moved for an instruction directing the jury to return a verdict in its favor. This motion was refused, and appellant here contends that the action of the court in that regard constitutes reversible error.

Appellee received his injuries at the intersection of the track of the Illinois Central Railroad Company with the tracks of appellant at or near the corporate limits of the village of Hawthorne, in Cook county. At this crossing there was one Illinois Central track running east and west, and two Belt tracks running north and south. The east track of appellant was ordinarily used by trains going north, while the west track was ordinarily used by trains going south. The crossing was interlocked, and controlled from an interlocking tower standing immediately east of the Belt tracks and south of the Illinois Central track. The crossing and the interlocking plant were maintained and operated by the Illinois Central Railroad Company. A few feet west of the Belt tracks was the Dolese & Shepard stone yard, with three switch tracks, which connected with the west Belt track at a point two hundred feet south of the crossing.

At about two o'clock in the afternoon of July 31, 1900, appellee, who had been in the employ of the Illinois Central Railroad Company as a section hand and track repairer for two or three years, was engaged in tightening and replacing

bolts in the tracks at this crossing. While so engaged a freight train approached from the north on the west Belt track, and when it reached a point about five hundred feet north of the crossing the engine stopped and whistled for the target which would indicate to the persons in charge of the train that the track was in position for the train to cross the intersection. The engine with a few cars was cut off from the balance of the train and proceeded south over the crossing. Appellant ceased work and stepped west of the track while the engine and cars crossed the intersection, after which he resumed work at the intersection of the Illinois Central track with the west Belt track. The cars which the engine had taken over the crossing were cut off at a point about two hundred feet south thereof, and the engine proceeded south to a water tank a half mile south of the crossing. After taking water the engine backed north and went into the Dolese & Shepard switch two hundred feet south of the crossing, where it remained until a switch engine came from the south and took away the cars which had been brought down by the first mentioned engine and left five cars just north of the Dolese & Shepard switch. The first mentioned engine then left the Dolese & Shepard switch and was attached to the most southerly of the five freight cars which had been left on the west Belt track by the switch engine. It whistled for the target, the signal being one long and two short blasts, and about two minutes thereafter started north on the west Belt track, pushing the five freight cars before it. In passing over the intersection the front or north car struck appellee, who was still repairing the intersection at the crossing of the Illinois Central track with the west Belt track, and ran over his left arm, crushing and mutilating it to such an extent as to require its amputation near the shoulder.

The evidence of some of the witnesses is to the effect that at the time of the accident a long north-bound freight train was crossing the intersection on the east Belt track.

There is no count of the declaration charging wanton or willful negligence on the part of appellant, nor is there any evidence showing that any of the persons on the engine or cars which inflicted the injuries knew of the presence of appellee at the intersection.

The principal contention of appellant is that appellee was guilty of contributory negligence as a matter of law. Appellee argues that whether or not he was guilty of contributory negligence is a question of fact, which is conclusively settled in his favor by the judgment of the Appellate Court.

The general rule is, that negligence and contributory negligence are questions of fact, but when there is no dispute as to the facts, or when only the evidence most favorable to the plaintiff, with the inferences reasonably to be drawn therefrom, is considered, and when all reasonable minds will agree, upon consideration of the facts, that the plaintiff's own negligence contributed to the injury, the question of contributory negligence becomes one of law, and the refusal to give a peremptory instruction for the defendant is then reversible error. *Beidler* v. *Branshaw*, 200 Ill. 425; *Wilson* v. *Illinois Central Railroad Co.* 210 id. 603; *Hewes* v. *Chicago and Eastern Illinois Railroad Co.* 217 id. 500.

The only evidence in the case was that introduced by appellee, and although there is some slight variance in the testimony of the several witnesses in regard to distances and in regard to the movements of the train which passed north on the east Belt track, yet upon the whole there is no substantial conflict in the evidence.

The appellee himself testified that he was thirty-nine years of age and that his hearing and sight were unimpaired; that he had been working with section gangs for the Illinois Central Railroad Company for two or three years before the accident; that while he was working at the intersection of the Illinois Central track with the east Belt track he saw a train coming from the south on that Belt track; that about ten minutes after he observed this train he went over to the

west Belt track and saw a train coming from the north on that track; that this train stopped some distance north of the crossing, a whistle was blown and the engine was cut off from the train; that the engine proceeded south over the crossing with the bell ringing, and appellee stepped to one side while it passed; that he then resumed his work on that track; that after the engine passed he looked north frequently for approaching trains, because most of the trains running on the west Belt track came from that direction; that after the engine had passed and after he had resumed work on the west Belt track, a north-bound train passed on the east Belt track; that the train that struck him must have come from the south; that he was on the ground, turning nuts on bolts, when a shadow suddenly appeared; that he raised up and was knocked down and remembers nothing further. He testified that he was facing south while working on the west Belt track, but had his eyes on his work when he was not looking north for trains approaching from that direction; that he had not looked south for ten minutes before he was struck; that he heard no whistle or other sound to warn him of the danger, and that he did not see the cars approaching from the south on the west Belt track; that the last he saw of the engine which had passed him was down by the water tank, a half mile away. He further testified that when he was with a gang and there was a foreman along, the foreman looked out for approaching trains, but that when the foreman was not along appellee had to watch for himself, as on this occasion.

It thus affirmatively appears from appellee's own testimony, which is not contradicted by any other evidence, that the engine or the cars to which it was attached were in plain sight of appellee from the time his attention was first directed to the train as it approached from the north until the time he was injured, and that his injury was caused by a failure to look to the south for approaching engines or cars. The only excuse offered by appellee in his testimony, or by

his counsel in argument in this court, for his failure to look to the south, is that appellee assumed that if a train or engine approached the crossing on the west Belt track it would be from the north. This assumption on the part of appellee, as he says, was based upon the fact that most of the trains on that track came from the north.

Appellee had two or three years' experience as a track repairer and section hand working on tracks. During this time he had frequently had occasion to observe the movement of trains. He was well aware of the danger of being upon a railroad track, and that it required constant vigilance to avoid injury. He had observed a train approach from the north on the west Belt track, and had seen the engine drawing that train and a few cars proceed south over the crossing, leaving the remainder of the train standing on the track a few hundred feet north of the crossing. He had observed the engine at a water tank half a mile south of the crossing. Any person of ordinary intelligence, and it must be presumed that appellee was such, who knew anything about the operation of trains, must have known that the engine would probably return from the south for the remainder of the train, instead of leaving it on the main track in the way of other trains, which, from the evidence, appear to pass there at frequent intervals. At least the circumstances were such as to put appellee upon his guard to watch for the return of that engine over the track upon which he was working.

There is no evidence of the exercise of any care whatever on the part of appellee to avoid being struck by the engine and cars which were approaching the crossing from the south on the west Belt track. All the evidence in reference to the exercise of care is confined to that used by appellee to avoid injury from a train or engine approaching from the north, although a string of freight cars, without any engine attached, was standing a few hundred feet north of him on that track, in plain view and directly in the way of any other train which might be coming from the north on that track.

The fact that most of the trains from the south approached the crossing on the east Belt track certainly did not relieve appellee of the duty of watching for one of the occasional engines or trains that might be coming from the south on the west Belt track at any time.

It is said, however, that appellee's attention was directed to his work, which he could not perform if he continually looked for approaching trains. That this contention is not tenable is conclusively shown by the testimony of appellee to the effect that he looked north almost constantly for approaching trains. It certainly required less diversion from his work to raise his eyes for an instant, which was all that was required to see objects south of the crossing, as he was facing in that direction, than to turn his head in order to look to the north.

This case is readily distinguished from the case of *Indiana, Illinois and Iowa Railroad Co.* v. *Otstot,* 212 Ill. 429, upon which appellee relies. There the person injured was working with his back toward the approaching engine and did not know that it was behind him, and as he worked he looked backward at intervals of two or three minutes, for the purpose of ascertaining whether any danger threatened, but failed to see the engine which injured him. He was also engaged in watching an engine which was in motion, switching cars on tracks in front of him. Here the person injured was working with the cars and engine which inflicted the injuries in front of him, and testifies that he had not looked in that direction for ten minutes, although he had often looked backward over his shoulder at the cars behind him, which were standing still without any engine attached. Otstot watched to avoid a danger which might approach from behind him; Skszypczak did not watch to avoid a danger which might approach from in front of him.

We are unable to reach any conclusion other than that the appellee was guilty of negligence in failing to keep a lookout for the approach of trains and engines from the

south, and that such negligence directly contributed to the injury. By the exercise of the slightest care on his part in this respect the injury would have been avoided.

The peremptory instruction should have been given.

The judgment of the Appellate Court and the judgment of the circuit court will be reversed and the cause will be remanded to the circuit court.

*Reversed and remanded.*