## Chicago, Rock Island & Pacific Railway Company et al. v. Samuel Miller.

### Gen. No. 13,179.

1. ORDINARY CARE—*of what exercise of, consists, while employed in railroad yards.* A person employed in railroad yards where to his knowledge trains are constantly being moved, is required to exercise a high degree of caution and watchfulness.

2. CONTRIBUTORY NEGLIGENCE—*when custom does not show absence of.* Held, that under the evidence in this case an employe injured in railroad yards was not entitled to rely upon an alleged custom as to the use of a particular track for incoming trains and did not defeat the charge of contributory negligence.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed, with finding of facts. Opinion filed June 14, 1907.

**Statement by the Court.** Appellants prosecute this appeal from a judgment against them entered in the Circuit Court in favor of appellee for personal injuries.

The injuries for which the action was brought were received May 24, 1902. At that time appellant, the Terminal Company, was the owner of the Grand Central passenger station near the intersection of Fifth avenue and Harrison street, Chicago, and certain railway tracks appurtenant thereto. Appellant, The Chicago Rock Island and Pacific Railway Company, and other railway companies were using the tracks and terminal facilities of the station in common with the Terminal Company, pending the completion of the present LaSalle Station, Chicago.

Appellee was a carpenter in the employ of the Terminal Company. On the date mentioned he was engaged with other laborers in laying a plank walk across the tracks just outside the train shed at the Grand Central station, and was struck by an incom-

ing Rock Island passenger train and injured. He brought this action against the Terminal Company, his employer, and the Rock Island Company, its tenant.

The declaration consists of five counts. It is averred in each count that the defendants were possessed of and operated a certain locomotive and train of cars in or near Grand Central station, which station was located near the intersection of Fifth avenue and Harrison street; and that appellee was in the employ of defendants as a laborer and was using due care and diligence for his own safety. The negligence averred in the various counts is as follows: "First count, negligent operation of the train; second count, failure to warn plaintiff of the approach of the train; third count, negligent speed of the train; fourth count; failure to place a guard to warn plaintiff of the approach of train; and fifth count, failure to place a guard to flag train so it could slacken speed."

Each defendant filed a plea of general issue.

The accident happened just south of the train shed. The situation as shown by the evidence, at the time of the accident, is not controverted. There were six tracks which entered the train shed from the south and ended there. These tracks were numbered from east to west from six to eleven inclusive. They were arranged in pairs with a platform between each pair. The pair farthest east in the shed were tracks six and seven. Outside and just east of the shed there were four short tracks numbered from one to four inclusive, beginning with the one farthest east.

There were a number of switches and cross-overs in the yard south of the shed. All switches were operated from a switch-tower located about five hundred feet south of the station. Just south of the place where the accident happened there was a cross-over leading from track six to track seven. The south end of the cross-over where it leaves track six was about two hundred feet south of the shed. The north end of the

cross-over where it enters track seven was about one hundred feet south of the shed. Still further south of this cross-over there was another cross-over from track six to track seven.

All of appellants' incoming trains entered the yards over the east main track. When they passed what appellee calls the "bend" they were on the east main track, but before they reached the shed they might be placed on any of the tracks leading into the shed or east of the shed. An operator in the switch-tower controlled the placing of the trains on the various tracks as they came in, receiving his orders by telephone from the station master in the train shed.

The Grand Central station at that time was used by the Rock Island, Lake Shore, Nickel Plate, Terminal Transfer, Baltimore & Ohio, and Chicago Great Western companies, and perhaps by other railway companies. More than 240 trains entered the shed daily. The busiest hours were from eight to ten o'clock in the morning, and from five to seven o'clock in the evening.

Appellee states in his testimony that he had been in the employ of the Terminal Company as a carpenter for about a year and a half and had worked where there were moving trains and cars. The accident occurred shortly before nine o'clock in the morning. It was a bright clear day. Appellee, with other carpenters, was laying a plank runway for baggage trucks across the six tracks about ten or fifteen feet south of the train shed. They were working on track six when appellee saw a Rock Island train approaching from the south on track six about two blocks south of the station. He was the first one of the gang who saw it, and warned his fellow laborers to clear the track. He ordered them, as he says, to leave the track. After giving the warning appellee went over to track seven to straighten up the planks which were lying there and spike them down. He testifies that he "got down with

one foot on the rail." The next thing he noticed was two short whistles and then the locomotive struck him.

When the train reached the switch 175 or 200 feet from the shed it was switched over upon track seven, where appellee claims he had started to work.

M. L. Bell, for appellants; Benjamin S. Cable, of counsel.

Russell M. Wing, Fred M. Wing and Fred W. Bentley, for appellee.

Mr. Justice Smith delivered the opinion of the court.

One of the questions involved in the case is, was appellee at the time of the accident in the exercise of ordinary care for his own safety?

The testimony of Peasley, the locomotive engineer who was in charge of the locomotive which struck appellee, is that he saw the gang working there before his locomotive went upon track seven, and saw them all clear of track seven. When he first saw appellee he was down spiking plank and that he got up and was clear of track seven, but he did not look around; that he gave two whistles to attract his attention, and appellee stepped over to the left just so that the bumper beam of the locomotive struck him and pushed him over. The train was going at that time between four and five miles per hour.

Thomas Howe, who was working in the yard at that time, corroborates Peasley fully as to appellee's action in stepping nearer track seven after the whistle blew.

James F. Walsh, yardmaster of the Terminal Company, was standing twenty-five or thirty feet from appellee at the time he was struck. He testified that he saw the train on track six and when it crossed over to track seven, and heard the signals, and appellee was "standing on the east rail, well about to clear the

east rail of number 7 track, between track 6 and track 7; he was not on the track.''

The witnesses all state that the train was moving at a speed between four and six miles per hour, and that it came to a stop immediately, or nearly to a stop. The evidence tends to show that appellee's back was toward the train while it was approaching. There is no controversy regarding the fact that the south end of the cross-over on which the train passed from track six to track seven was about two hundred feet south of the shed. It was therefore between the train and appellee when appellee saw the train approaching; and appellee could not know nor had he a right to assume that the train would continue on track six, for it might be transferred to track seven at the cross-over by orders which he had no means of hearing or seeing except by observing the train. Instead of watching the train, he turned his back upon it and gave no further attention to it. He went upon or near to track seven upon which the train could, and for aught he knew, would be transferred, without taking the slightest precaution to observe whether he would be in the way of the train which he knew was approaching. He was at work in a place of danger. In working in such a place where 240 trains entered or departed each day, and every train had to be pulled in or out empty, making 480 train movements each day, he took upon himself the burden of looking out for trains. Ordinary care on his part, under such conditions, required a high degree of caution and watchfulness to avoid danger. Wilson v. Illinois Cent. R. Co., 210 Ill. 603.

While there is a slight variation between appellee's statement as to his position on track seven at the time of his injury, and the testimony of the other witnesses, all the witnesses agree that he went upon track seven and commenced to work there with his back to the approaching train  There is therefore no dispute as to the essential facts. Appellee's evidence is not con-

tradicted by the other evidence in the case as to any essential fact. It affirmatively appears from his evidence that having observed the approaching train when it was two blocks away, and given warning to his fellow laborers, he assumed that the train would come in on track six and paid no further attention to it. In so doing, we think, he failed to exercise ordinary care for his own safety. Belt Ry. Co. v. Skszypczak, 225 Ill. 242.

It is urged that appellee was excused from using precaution to ascertain whether the train was approaching on track seven because of a practice or custom to use track six only for inbound trains and track seven for outbound trains. The court erroneously admitted evidence on the part of appellee of such custom upon the theory that it excused appellee for his failure to exercise the care necessary to ascertain on what track the train was entering the shed.

Assuming that the evidence showed such a practice or custom, appellee was not entitled to rely upon it, under the circumstances disclosed by the evidence. L. S. & M. S. R. Co. v. Hart, 87 Ill. 529; Hoy v. Terminal Railroad Assn., 65 Ill. App. 349; Tomko v. Cent. R. Co., 37 N. Y. S. 144.

We think, however, the evidence fails to show the practice or custom. The great weight of the evidence is against it.

In our opinion appellee's contributory negligence barred his recovery. It directly contributed to the injury of which he complains. The judgment is therefore reversed with a finding of fact.

*Reversed with finding of fact.*