John F. Devine, Administrator, Plaintiff in Error, v. Chicago City Railway Company, Defendant in Error.

Gen. No. 15,893.

INSTRUCTIONS—*when peremptory properly given.* In an action on the case for personal injuries a peremptory instruction is properly given where the evidence establishes beyond controversy that the defendant was not guilty of the negligence charged.

Action in case for death caused by alleged wrongful act. Error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed October 20, 1911.

Statement by the Court. An action was brought by the public administrator as administrator of the estate of Peter Gentleman, deceased, against the Chicago City Railway Company for negligently injuring the person of the deceased by crushing him between two street cars upon the tracks of the street railway operated by it, located on Clark street near the corner of Washington street, Chicago, and that such injuries resulted in and were the cause of the death of the deceased.

The evidence showed that the street car company had two street car tracks on Clark street at Washington street where the lines terminated; that the cars reached that point in their travel north, and were then turned back and sent south. The east track was the north-bound track, and the west track the south-bound

track. Several switches were operated for the purpose of distributing the cars upon the two tracks before they were sent south upon their return trips. The southernmost of the three switch tracks shown was operated by a hand switch which was rarely used, and is not involved in this case. The middle, and northernmost switch tracks were in constant use. On the south end of the switch track in question, that is the middle switch of the three, at its junction with the north-bound track was a lever switch operated by a man stationed there, who by working a lever sent the cars either to the east or the west track as was deemed advisable. The north end of this cross-over at its junction with the south-bound track was formed by an automatic switch which operated only for shunting cars going north into the west track after they had been sent in that direction by the lever switch. It required no man to be stationed there. The effective part of this switch consisted of a steel tongue opening north on the east rail of the west track together with a spring. The office of the spring was to replace the tongue after it had been pried open by the wheels of the cars passing to the west track. When the tongue was forced open it formed a diagonal track from the east to the west track. When the tongue was in its normal condition it was pressed close to the east rail of the west track by a spring, forming an unbroken track south on the west track of the road. When the north-bound cars had been sent over the middle switch track just described to the west track, they continued north until they got to the end of the line at Washington street, from which point they started south again on the west track. When the north-bound cars were not sent over the middle switch by the hand lever at the south end thereof, they continued north on the east track to the end of the line at Washington street, and starting south, they were automatically switched by a switch similar to the one above described at the north end of

Devine v. Chicago City Ry. Co., 165 Ill. App. 157.

the north switch track, and shunted over to the west track.

All of the cars were supplied with two iron fenders, adjustable, so as to be let down at that end of the car facing the direction in which it moved, and hooked and fastened up at the rear end of the car. When cars neared the terminus the fenders at the north end were fastened and chained up against the car, and the fenders on the south end of each car were released and let down. During the rush hours when cars were passing in and out of the two termini or pockets as they were called, at intervals of about ten seconds, fender boys were employed, whose business it was to hook up the fenders at the north end of each car and release them at the south end. The deceased was a fender boy. On October 18, 1901, he was adjusting the fender of a Wentworth avenue car which had just reached the terminus on the east track, and was standing still awaiting its turn to get into the pocket so as to be switched to the west or south-bound track. In doing this work, he was standing on a ledge outside of the north end of the car. He was facing nearly south or east. He had lifted the fender and was in the act of fastening it. At that moment another Wentworth avenue car on the west track moved south. When it passed over the tongue of the automatic switch, which should have been flush with the rails so as to permit this car to move south on the west track, the tongue was not closed but open, and thereby the south-bound car was thrown upon the east track and collided with the standing car, crushing the deceased between them.

Concededly the evidence shows that the probable cause of the displacement of the tongue of the automatic switch was a piece of bagging or gunny sack which appeared to be wedged into the switch, preventing its automatic closing. This was dug out after the collision by means of an iron rod by one of the inspectors.

The deceased was seriously injured, sustaining a

fracture of the pelvic bone and a rupture of the bladder. He was operated on by surgeons several times. The final operation was in April, 1903, which consisted in an attempt to close up the opening or fistula which had been made for the discharge of the urine and pus, and carry the urine through its natural course. The operation was not successful and he died in the early part of 1904.

Upon the close of the plaintiff's testimony, the defendant requested an instruction directing the jury to find the issues for the defendant. The motion was sustained and the jury were instructed accordingly. The jury returned a verdict as directed. A motion for a new trial was made and overruled and judgment was entered in favor of the defendant. This writ of error is prosecuted to reverse the judgment.

GOLDZIER, RODGERS & FROEHLICH, for plaintiff in error.

B. F. RICHOLSON and WATSON J. FERRY, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The main question presented by the record under review is whether or not the trial court erred in directing a verdict at the close of the testimony offered by the plaintiff. The solution of this question involves, among other questions, a consideration of the evidence offered for the purpose of determining whether it supports or tends to support the averments of negligence made in the declaration or any count thereof.

The declaration contained ten counts, but the first, fifth, sixth and seventh were withdrawn. The negligence averred in the remaining counts is that the defendant permitted the switch to be and remain open and unlocked, whereby a south-bound car was propelled against a north-bound car; that the defendant provided an unfit and unsuitable switch; that the switch was

Devine v. Chicago City Ry. Co., 165 Ill. App. 157.

permitted to be and remain in bad repair so that it did not lock; that the switch was defective in its operation so that it did not lock; and that the defendant failed to properly inspect the switch.

Upon an examination and consideration of the evidence and testimony offered, including the deposition of deceased in another case, we are of the opinion that it does not tend to support the allegations of negligence made in any of the counts of the declaration. The testimony does not tend to prove that the switch was unfit or unsuitable, or that it was in bad repair, or that it was defective in its operation, or that the defendant railway company failed to properly inspect it, or that the defendant permitted it to remain open and unlocked. As stated by counsel for plaintiff in error in their brief and argument filed in this proceeding, the evidence shows as the probable cause of the displacement of the tongue of the automatic switch a piece of bagging or gunny sack which appeared to be wedged into the switch. This was dug out of the switch after the accident by one of the defendant's inspectors by means of an iron rod. It further appears from the evidence that when the piece of bagging was removed the switch worked perfectly. The switch worked perfectly a few seconds before the accident. The car just preceding the one which caused the collision passed over the switch, and continued on the west or south-bound track about ten seconds before the accident. This shows that the switch worked perfectly at that time. The only legitimate inference from these facts shown by the plaintiff's evidence is that in some way the piece of bagging became wedged into the switch within about ten seconds of the time of the accident, and prevented the switch from closing automatically, and that the switch did not fail to act because of any defect or because of disrepair. By the testimony of the deceased taken in another case, and introduced by the plaintiff in error in the case under review, it appeared that he had been working as fender man at this place for a

year before this occurrence, and that the cars had "been going along there every few seconds about that hour, passing over the switch; there was never anything the matter with it before that time;" and that he did not remember of any accident before the one here in question on that switch. Plaintiff's witness Conlon, the motorman on the car on which plaintiff was injured, testified that cars were dispatched from the pockets north of the switch and proceeded south about every ten seconds, and, "I had seen a car going south across the switch just before the car came that hit mine, and went out apparently without any hitch or difficulty at all," and that he had not at any time prior to that trip on that day noticed anything amiss with the switch; and as far as he had observed it worked all right up to the time of the accident. He had no trouble with it, and saw no one else have any. This witness also testified that supervisor Jones was there to see that there were no blockades and to pass the cars out of the pockets as quickly as possible; also, to see that every man did his work, and that the traffic was kept moving. The witness testified that Jones would clean out the switches and see if anything was wrong with them. The witness said he saw another employe of the company working from Thirty-first street to Washington street, who carried an oil can and a hook for lifting and cleaning switches and oiling them, but he could not say how often he worked over the territory. This witness also spoke of another man who carried a broom with a spear on the end of it with which he cleaned out the dirt that lodged in the switch. This man came generally in the forenoon and the afternoon. This testimony was corroborated by plaintiff's witnesses Curtin, Foley and Wagner.

It thus affirmatively appears from the testimony of the plaintiff's witnesses (and of course their testimony was not disputed by the defense) that the track and switches of the defendant were in perfect condition and working order within a few seconds of the accident,

and that the track and switches were inspected and cleaned two or three times each day; and that, therefore, instead of establishing the negligence of the defendant alleged in the declaration, the evidence established without controversy that the defendant was not guilty of the alleged negligence. The trial judge was thus afforded justifiable ground for directing a verdict. Belt Ry. Co. v. Skszypsczak, 225 Ill. 242; Libby v. Cook, 222 *id.* 209.

Having reached the conclusion indicated above on the main question of liability, it is unnecessary for us to discuss the question whether the evidence shows that the deecased was in the exercise of ordinary care for his own safety, or the question whether the injuries complained of were the cause of the death of Peter Gentleman.

The judgment is affirmed.

*Affirmed.*